# FOGG *v.* BLAIR.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF MISSOURI.

No. 188.  Argued January 24, 27, 1890. — Decided March 3, 1890.

A liquidated claim against a railroad company, not converted into a judg-ment, which another railroad company, purchasing its road and property, agrees with the selling company to assume and pay as part of the consid-eration, does not thereby become a lien upon the property so as to take priority over the lien of a mortgage made by the purchasing company to secure an issue of bonds.

ON the 16th of February, 1867, the St. Louis and Keokuk Railroad Company was incorporated by the legislature of Mis-souri to construct and operate a railroad from some suitable point on the North Missouri Railroad, not exceeding thirty miles west of St. Charles, in St. Charles County, to some point near the mouth of the Des Moines River, on the northern boundary of the State. Under its charter the company located its road between the points designated and constructed a por-tion of it and graded other portions, and in this work expended several hundred thousand dollars.

The appellant, Josiah Fogg, held a demand against this company for work and advances on its account, and on the 22d of September, 1870, an adjustment and settlement of the amount was had between them; and it was found that the com-pany was indebted to him in the sum of $9547.75.

Afterwards, on the 13th of June, 1872, a corporation known

as the St. Paul, Hannibal and Keokuk Railroad Company was formed under the general law of Missouri, to construct and operate a railroad with one or more tracks, from the city of St. Louis to a point near the northeast corner of the State opposite to Keokuk in Iowa, with a branch, in Lincoln County, to its coal fields, from a point near Troy, and a branch up the valley of Mill Creek, from a point where the line crosses the creek.

To this new corporation the old corporation, upon the request and direction of the holders and owners of a majority of its stock, on the 4th of March, 1873, sold and transferred its entire road and all the branches, buildings, machinery and appurtenances belonging to or connected with it.

. In consideration of the transfer, the new corporation, that is, the St. Louis, Hannibal and Keokuk Railroad Company, among other things agreed to assume, pay and satisfy all the debts and liabilities incurred by the first company or legally imposed upon it, for right of way, station grounds, ties and bridging, and also to perform various contracts of that company which are specially mentioned. The new corporation was composed principally of the same persons and the same officers as the old corporation, and among the contracts assumed was one with the Missouri and Iowa Construction Company for building the road, and it stipulated that in payment of this work bonds of the company should be issued secured by a first mortgage on its property.

Pursuant to this contract, the new company, on the 1st of October, 1872, executed to Dewitt C. Blair of New Jersey, and Clarence C. Mitchell of New York, a mortgage or deed of trust of its railroad, then constructed or that might thereafter be constructed, with its right of way, buildings and appurtenances then existing or which might afterwards be acquired, its rolling stock and machinery of every kind, and all its franchises and property, to secure bonds of the company issued on that day, in sums of $1000 each, to the amount of $4,200,000. ·

Afterwards this mortgage was taken up and cancelled, and on the 1st of August, 1877, a new mortgage or deed of trust was executed by the company to Dewitt C. Blair, of all its property situated between the cities of St. Louis and Hannibal

in Missouri, and its franchises, to secure the payment of its bonds issued of that date, amounting to $1,680,000. The interest was not paid upon these bonds, and the trustee, on the 6th of February, 1884, commenced a suit in the Circuit Court of the United States for the Eastern District of Missouri, to foreclose the mortgage and sell the property. The bill not only made the mortgagor a party defendant, but also certain persons named, of whom Josiah Fogg was one, representing that they claimed to have liens, as judgment creditors, incumbrancers, or otherwise, upon the mortgaged premises, but alleging that their interest, if any, accrued subsequently to the lien of the mortgage and was subordinate thereto.

As mentioned above, on the 22d of September, 1870, Josiah Fogg had a settlement with the St. Louis and Keokuk Railroad Company, by which the amount due him by the company on that date was agreed to be $9547.75. For this amount and interest he brought suit in the Circuit Court of the United States in April, 1881, and on the 3d day of October, 1882, he recovered judgment for $16,439.63. Execution issued thereon having been returned unsatisfied, in May, 1883, he brought suit, on the equity side of the court, against the St. Louis, Hannibal and Keokuk Railroad Company to have that judgment declared a lien upon its property and to compel that company to pay the judgment, and to enjoin it from selling or incumbering its property until such payment was made. The suit was brought against both the old and new company, and resulted in a decree entered on the 5th of May, 1884, adjudging that the two companies were liable jointly and severally for the judgment and interest, which amounted then to $18,365.11, the payment of which was decreed against them. The judgment was not declared to be a lien upon the property of the company, nor was the use or disposition of its property enjoined.

To the suit for the foreclosure of the mortgage brought by Dewitt C. Blair, trustee, Josiah Fogg appeared and answered the bill, and also filed a cross-bill. By his cross-bill he sought to obtain priority for his judgment over the demands of the trustee, acting for and representing the bondholders. He set

forth the origin of his demand, the recovery of judgment for the amount against both the first and second corporations, and founded his claim to priority over the mortgage on the theory, that the old corporation could not transfer its property to the new corporation without the new corporation becoming trustee for all the creditors of the old company; that its property was thus affected with a trust, and could not be subjected to a mortgage so as to give priority to the bonds secured over the demands of creditors existing at the time of such transfer; and that the trustee, Dewitt C. Blair, took the bonds of the company for John I. Blair and the executors of Moses Taylor, deceased; and charged, upon information and belief, that he took them with full notice of the claim of the complainant against the old corporation; and that the suit to foreclose the mortgage was a scheme designed to cut him off from enforcing his demand, and to have the railroad and its appurtenances sold under a decree of foreclosure and bought in by said John I. Blair and the executors of Moses Taylor, at a price greatly under their actual value. To this cross-bill the trustee, Dewitt C. Blair, as defendant, answered denying its allegations, some of them positively and others upon information and belief — positively the allegations that the transfer of the property of the first corporation was made in fraud of the rights of the complainant, and that the second corporation took the property with knowledge and notice of the debt owing to him by the first corporation. A replication was filed to the answer and proofs were taken. Upon the hearing the court dismissed the cross-bill, holding that the claim of the complainant was not entitled to priority over the bonds secured by the mortgage. 25 Fed. Rep. 684, and 27 Fed. Rep. 176. From this decree the case was brought by appeal to this court.

*Mr. James Carr* (with whom was *Mr. George D. Reynolds* and *Mr. E. A. Sumner*) for appellant.

*Mr. Walter C. Larned* for appellee.

Mr. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The claim of the appellant that his demand, which passed into judgment May 5, 1884, against both the St. Louis and Keokuk Railroad Company and the St. Louis, Hannibal and Keokuk Railroad Company, is entitled to payment prior to the bonds secured by the mortgage or trust deed, would seem to be answered by the dates of the judgment and mortgage respectively. The judgment was not rendered against the original company until October 3, 1882, and not against both companies until May 5, 1884. The mortgage was executed on the 1st day of August, 1877, five years before the first judgment and nearly seven years before the second.

It does not appear in the record precisely what the services were which were rendered by the complainant, or for what purposes advances by him were made. This is not material, however, as no claim is made, because of the nature of those services and advances, to a lien on the property of the original company, under the statute of the State. It does not appear that any proceedings were taken to establish such a lien. Independently of that statute, there was no lien upon any property of the railroad company for the demand of the complainant. It stood like any ordinary debt against a corporation, which could only be enforced by legal proceedings establishing its validity and amount by judicial determination, and then by process upon the judgment obtained, in subordination to any previously existing liens upon the property.

In some States — and this is the case in Missouri — statutes make judgments of their courts liens upon the real property of the judgment debtor, and the same rule applies in such States to judgments in the courts of the United States. But in all cases the judgments become liens only from the time they are rendered, or notice thereof is filed in the register's office of the county where the property is situated. They are subordinate to any prior mortgage upon the property. This doctrine is so familiar that it is surprising that any other can be supposed to exist. The property of a railroad company is not held under any such trust to apply it to the payment of its debts as to restrict its use for any other lawful purpose, it matters not how meritorious the demand of the creditor may

be. He must obtain a lien upon the property of the company, or security in some other form, or he will have to take his chances with all other creditors to obtain payment in the ordinary course of legal proceedings for the collection of debts.

In *Thompson* v. *White Water Valley Railroad Co.*, decided at the present term, 132 U. S. 68, it was held that the claim of bondholders of the company secured by a mortgage upon its railroad, and all property then appertaining thereto, or which the company might afterwards acquire, had priority over a claim of contractors to a lien upon the rents and profits of a portion of the road constructed by them subsequently to the mortgage. It was earnestly contended that they had an equitable lien upon the earnings of that portion of the road because with their moneys it was constructed. But the court replied that the work was not done at the request of the mortgagees, but upon a contract with the lessee of the road, by which the latter stipulated, as one of the considerations of the lease, to construct that part of the line, and that with those contractors the bondholders secured by the mortgage had no relations, and therefore incurred to them no obligation. In the opinion of the court reference was made to the case of *Galveston Co.* v. *Cowdrey*, 11 Wall. 459, 481. In that case there were several creditors, and it was contended that priority should be given to the last creditor, for he had aided in preserving the property. But the court answered that this rule had never been introduced into our laws, except in maritime cases, which stood on a particular reason; that by the common law whatever is affixed to the freehold becomes a part of the realty, except certain fixtures erected by tenants, which did not affect the question; that rails put down upon the company's road become a part of the road, and that the rule also applies to those permanent fixtures which are essential to the successful operation of the road; they become the property of the company, as much so as if they existed when the mortgage was executed. The case of *Thompson* v. *White Water Valley Railroad Co.* was much stronger than the one now before us; for there a special contract existed between the lessee company and the contractors that such lien should

exist; while here there was no contract that the complainant's claim should be a lien upon any property.

In *Dunham v. Railway Co.,* 1 Wall. 254, 267, it was held that a mortgage by a railroad company of its road "built and to be built" took precedence, even as regards the unbuilt portion, over the claim of a contractor who had himself finished it under an agreement with the company that he should retain its possession and apply its earnings to the liquidation of the debt to him, and who had in accordance with such agreement taken possession of the road and retained it. The mortgage was executed and recorded before the contract for the completion of the road was made; and the court said: "All of the bonds, except those subsequently delivered to the contractor, had, long before that time, been issued, and were in the hands of innocent holders. The contractor, under the circumstances, could acquire no greater interest in the road than was held by the company. He did not exact any formal conveyance, but if he had, and one had been executed and delivered, the rule would be the same. Registry of the mortgage was notice to all the world of the lien of the complainant, and in that point of view the case does not even show a hardship upon the contractor, as he must have known, when he accepted the agreement, that he took the road subject to the rights of the bondholders."

We do not attach any weight to the objection that the transfer by the old company of its entire property to the new company was illegal and *ultra vires;* and, therefore, to be disregarded. However such a transfer might be considered in a suit to set it aside, the objection does not lie in the mouth of the appellant, for he has proceeded against the new company and obtained, upon the assumed validity of such transfer, a decree that it pay his judgment, which is founded upon a demand that company agreed to assume, as part of the consideration of the transfer.

There is no evidence in the record before us that the parties who took the bonds issued by the St. Louis, Hannibal and Keokuk Railroad Company had any notice, actual or constructive of the demand of the complainant. But if they had, it

would not have affected their rights. That demand was not then reduced to judgment, and created no lien upon the property of the company, nor any restriction upon the company's right to use it for any lawful purpose. The bonds were given to raise the necessary funds to complete the road of the company, and the mortgage was executed to secure their payment. They were negotiable instruments, and in the hands of the purchasers cannot be impeached for any neglect of the company issuing them to pay the demands of other creditors. We are unable to perceive any ground upon which their priority over the claim of the appellant can be in any way impaired.

We do not question the general doctrine invoked by the appellant, that the property of a railroad company is a trust fund for the payment of its debts, but do not perceive any place for its application here. That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence. The cases of *Curran* v. *State of Arkansas*, 15 How. 304, 307, and *Wood* v. *Dummer*, 3 Mason, 308, give no countenance to anything of the kind.

*Judgment affirmed.*