# HOLLINS *v.* BRIERFIELD COAL AND IRON COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA.

No. 29. Argued October 27, 30, 1893. — Decided November 20, 1893.

The trustee of a mortgage upon the real estate of an Alabama corporation commenced a suit in the Circuit Court of the United States for the foreclosure of the mortgage. In his bill he set up that some stockholders were liable for unpaid assessments on their stock, and, while asking for a foreclosure of the mortgage and sale of the property, he prayed that other creditors of the corporation might be permitted to intervene and become parties, and have their claims adjudicated, and that a full administration be had of the estate. About three months after the commencement of that suit, a contract creditor, who had not reduced his claim to judgment, filed his bill in equity in the same court, suing for his own benefit and that of all creditors who should become parties, asking to have the mortgage declared void, to have the property sold, and the proceeds applied to the payment of the debts of the creditors, parties to the suit, and for a liquidation. The plaintiff in the second suit did not intervene in the foreclosure suit. In due course a decree was entered in the foreclosure suit for the sale of the property. The court then entered a decree dismissing the creditor's bill upon the merits. *Held,* That this was error, and that the bill should have been dismissed for want of jurisdiction.

Simple contract creditors of a corporation, whose claims have not been reduced to judgment, and who have no express lien on its property, have no standing in a Federal court of equity, to obtain the seizure of their debtor's property, and its application to the payment of their debts.

This rule is not affected by the fact that a statute of the State in which the property is situated, and in which the suit is brought, authorizes such a proceeding in the courts of the State, because the line of demarcation between equitable and legal remedies in the Federal courts cannot be obliterated by state legislation.

This rule is not affected by the fact that when such a suit is brought in a Federal court, another suit is pending there for the foreclosure of a mortgage upon the property of the corporation.

In such case the defence that the rights of the plaintiff at law should have been exhausted before commencing proceedings in equity is a defence which must be made *in limine,* and, if not so made, the court of equity is not necessarily ousted of jurisdiction.

Neither the insolvency of a corporation, nor the execution of an illegal

trust deed, nor the failure to collect in full all stock subscriptions, nor all together give to a simple contract creditor of the corporation any lien on its property, or charge any direct trust thereon.

*Case* v. *Beauregard*, 101 U. S. 688, *Sanger* v. *Upton*, 91 U. S. 56 and *Terry* v. *Anderson*, 95 U. S. 628, distinguished; and shown not to conflict with the subsequent cases of *Wabash, St. Louis & Pacific Railway* v. *Ham*, 114 U. S. 587; *Fogg* v. *Blair*, 133 U. S. 584; and *Hawkins* v. *Glenn*, 131 U. S. 319.

When a corporation becomes insolvent, the equitable interest of the stockholders in the property and their conditional liability to creditors, place the property in a condition of trust, first for creditors, and then for stockholders; but this is rather a trust in the administration of the assets after possession by a court of equity, than a trust, attaching to the property, as such, for the direct benefit of either creditor or stockholder.

THE facts in this case were as follows: The Brierfield Coal and Iron Company was incorporated under the laws of Alabama, May 4, 1882. On September 1, 1882, a conveyance was made by the company to Preston B. Plumb, as trustee, to secure an issue of $500,000 in bonds. On July 25, 1887, the trustee, Plumb, requested a further conveyance and assurance, pursuant to a covenant in the deed of September, 1882, which further conveyance was executed by the company on July 29, 1887. On August 1 he demanded the surrender of all the company's property to him, as trustee. This was done, and he placed John G. Murray in charge to control and manage it. On August 3 he filed a bill in the Circuit Court of the United States for the Middle District of Alabama, against the company, joining as defendants certain stockholders, bondholders, and creditors, though not the plaintiffs in the present suit. That bill set out the organization of the corporation, the stockholders, with the amounts of stock subscribed, and the amounts paid upon such stock, and alleged that the subscribers were liable for the unpaid subscriptions, but that the assistance of the court was necessary for the assessment of such sums. It also set out the issue of the bonds, and their present owners so far as known, a default in the payment of the interest due thereon, the property and indebtedness of the company, the unsecured indebtedness being alleged to amount to about $200,000. The bill further averred that up

to that time the chief industry of the company had been the manufacturing of cut nails from iron; that owing to overproduction in the country this business had become unprofitable to the company, and that it was desired to change the industry from the manufacture of nails to the production of pig iron, and that it had purchased property with a view to carrying on that industry; that it did not have money enough to successfully carry it on. The bill also alleged that the trustee had taken possession, as authorized by the deed of trust; that he could not carry on the business of the company without obtaining money on the credit of the property; and prayed the direction of the court as to whether he should be permitted to borrow such money, and issue certificates of indebtedness therefor. It asked that all creditors of the corporation and claimants against the estate be permitted to make themselves parties and have their claims adjudicated; that a full administration be had of the estate, and, if need be, a foreclosure and sale. Subsequently, Plumb resigned as trustee, and W. L. Chambers was substituted in his place. Proceedings were had in that case, which resulted, on July 8, 1889, in a decree for the foreclosure of the trust deed and a sale of the property. Nearly three months after the commencement of the Plumb suit, and on October 28, 1887, these appellants, as plaintiffs, filed a bill in the same court, making the coal company and sundry stock and bondholders, together with the trustee Plumb, parties defendant. The plaintiffs were unsecured creditors of the company, having claims contracted in 1886 and 1887, four or five years after the issue of the bonds and execution of the trust deed, who sued on behalf of themselves and all other creditors of the coal and iron company, who were willing to come in and contribute to the expenses of the suit. After setting forth their claims, they alleged that the conveyance to Plumb, as trustee, was absolutely void; that a large amount was still due on the stock; they asked to have a receiver appointed, and the property sold in satisfaction of their claims; and that such receiver have authority to collect the unpaid stock subscriptions, to be also applied in satisfaction of their claims. They alleged the pendency of

the suit brought by Plumb as trustee, but did not ask to inter-
vene therein. After the decree of foreclosure and sale in the
Plumb case, and on July 24, 1889, a final decree was entered
dismissing this bill. From such decree of dismissal plaintiffs
appealed to this court.

*Mr. Alexander T. London* for appellants.

This bill was filed on the well-established principle that the
assets of a corporation, including unpaid stock subscriptions,
are a trust fund for the benefit of corporate creditors, upon
which they have a lien in equity, and that the directors have
no power to waste or dispose of this trust fund.

This doctrine was said by Mr. Justice Miller, for this court,
in *Sawyer* v. *Hoag*, 17 Wall. 610, 620, to be then of modern
date. It has since been so often reiterated and affirmed in
this court that I shall content myself with quoting it from the
opinion in *Sanger* v. *Upton*, 91 U. S. 56, 60, and the citation
of a few of the authorities.

In this case Mr. Justice Swayne, for this court, states the
rule with great force and clearness. He says: " The capital
stock of an incorporated company is a fund set apart for the
payment of its debts. It is a substitute for the personal lia-
bility which subsists in private copartnerships. When debts
are incurred, a contract arises with the creditors that it shall
not be withdrawn or applied, otherwise than upon their de-
mands, until such demands are satisfied. The creditors have
a lien upon it in equity. If diverted, they may follow it as
far as it can be traced, and subject it to the payment of their
claims, except as against holders who have taken it *bona fide*
for a valuable consideration and without notice. It is publicly
pledged to those who deal with the corporation, for their
security. Unpaid stock is as much a part of this pledge, and
as much a part of the assets of the company, as the cash
which has been paid in upon it. Creditors have the same
right to look to it as to anything else, and the same right to
insist upon its payment as upon the payment of any other
debt due to the company. As regards creditors, there is no

distinction between such a demand and any other asset which may form a part of the property and effects of the corporation." See also *Upton* v. *Tribilcock*, 91 U. S. 45; *Scovill* v. *Thayer*, 105 U. S. 143, 150; *Handley* v. *Stutz*, 139 U. S. 417, 427; *Fogg* v. *Blair*, 139 U. S. 118.

This doctrine is fully recognized in Alabama. *Bank of St. Mary's* v. *St. John*, 25 Alabama, 566; *Smith* v. *Huckabee*, 53 Alabama, 191; *Montgomery & West Point Railroad* v. *Branch*, 59 Alabama, 139.

Where a corporation has wrongfully disposed of its assets or is wasting them, or is insolvent, or where there has been a practical dissolution, a creditor at large of the corporation may maintain a bill to enforce his lien upon the assets and have a receiver appointed to protect the trust fund. *Bank of St. Mary's* v. *St. John*, 25 Alabama, 566; *Conro* v. *Gray*, 4 How. Pr. 166; *Fisk* v. *Union Pacific Railroad*, 10 Blatchford, 518; *St. Louis & Sandoval Coal Co.* v. *Edwards*, 103 Illinois, 472; *Evans* v. *Coventry*, 5 De G., M. & G. 911; *Kearns* v. *Leaf*, 1 Hem. & Mill. 681; *Re State Fire Ins. Co.*, 2 Hem. & Mill. 457; *Sanger* v. *Upton*, 91 U. S. 56; *Terry* v. *Tubman*, 92 U. S. 156; *Terry* v. *Anderson*, 95 U. S. 628; *Mellen* v. *Moline Iron Works*, 131 U. S. 352.

The learned counsel for appellees insist that there is no equity shown in the bill, and apart from the merits, the Circuit Court had no jurisdiction to entertain the bill, because the complainants were creditors at large and failed to allege the exhaustion of legal remedies; and he relies upon *Taylor* v. *Bowker*, 111 U. S. 110; *Scott* v. *Neely*, 140 U. S. 106; *National Tube Works* v. *Ballou*, 146 U. S. 517.

Since that brief was filed decisions have been handed down in this court in the cases of *Cates* v. *Allen*, 149 U. S. 451, and *Swan Land & Cattle Company* v. *Frank*, 148 U. S. 603; and I presume these cases will be relied upon, so I shall consider them all and endeavor to state as clearly as I can, what I conceive to be the distinction between them and the case at bar.

The distinction between all these cases and the one at bar, in my judgment, rests on the following propositions, which are sustained by the highest authority:

1. The capital stock and assets of a corporation constitute a trust fund pledged for the benefit of creditors, which neither the officers nor stockholders can divert or waste. 2 Story Eq. Jur. § 1252; *Wood* v. *Dummer*, 3 Mason, 308; *Sawyer* v. *Hoag*, 17 Wall. 610; *Sanger* v. *Upton*, 91 U. S. 56; *Upton* v. *Tribilcock*, 91 U. S. 45; *Scovill* v. *Thayer*, 105 U. S. 143; 2 Mor. on Corp. § 780 *et seq.*

This principle, which was first declared in *Wood* v. *Dummer*, *supra*, has long been recognized in this State, as elsewhere, and repeatedly affirmed. *Bank of St. Mary's* v. *St. John*, 25 Alabama, 566; *Smith* v. *Huckabee*, 53 Alabama, 191; *Montgomery & West Point Railroad* v. *Branch*, 59 Alabama, 139; *Elyton Land Co.* v. *Birmingham Co.*, 92 Alabama, 407.

2. Following this principle, the lien of creditors on this trust fund is recognized in equity and the authorities are numerous that a corporate creditor, without judgment, may come into a court of equity, upon the insolvency or dissolution of the corporation, to protect this trust fund, thus pledged, from waste or diversion and enforce his lien. 2 Mor. on Corp. §§ 797, 798; 2 Story Eq. § 1252a; Perry on Trusts, § 242; *Bank of St. Mary's* v. *St. John*, 25 Alabama, 566, 618; *Conro* v. *Gray*, 4 How. Pr. 166; *St. Louis & Sandoral Coal Co.* v. *Edwards*, 103 Illinois, 472; *Evans* v. *Coventry*, 5 De G., M. & G. 911; *Kearns* v. *Leaf*, 1 Hem. & Mill. 681; *Re State Fire Ins. Co.*, 2 Hem. & Mill. 457; *Sanger* v. *Upton*, 91 U. S. 60; Beach on Receivers, 416.

. 3. This right of the creditors at large of a corporation to proceed in equity is in strict analogy to the right of a creditor of a partnership, and is based upon the same principle of equity. Mr. Morawetz, after declaring the rule as stated in reference to corporate creditors, says: "Similar equitable relief will for the same reasons be granted to creditors of a limited partnership, or of a joint stock company whose capital has been equitably pledged as a fund for the security of creditors." 2 Mor. on Corp. § 798.

In *Holt* v. *Bancroft*, 30 Alabama, 193, 204, the right of a partnership creditor to come into equity without first exhausting his legal remedies is expressly decided. In *Case*

v. *Beauregard*, 101 U. S. 688, 691, a creditor at large of a partnership filed a bill to subject firm assets to his debt; on the hearing his bill was dismissed. He then filed a second bill for the same cause of action, alleging, in addition to the matters set forth in the former bill, the recovery of a judgment, the issue of an execution and return of *nulla bona*. It was held that the former decree was as *res adjudicata* a bar to the second suit. The case necessarily involved the determination of the question whether on the first bill the creditor could have had relief or not, and the court sustained the proposition that he could. In the opinion of the court, Mr. Justice Strong discusses learnedly and at length the reason of the rule requiring the creditors to exhaust their legal remedies before seeking the aid of a court of equity. He says: "But, without pursuing this subject farther, it may be said that whenever a creditor has a trust in his favor, or a lien upon the property for the debt due him, he may go into equity without exhausting legal processes or remedies. *Tappan* v. *Evans*, 11 N. H. 311; *Holt* v. *Bancroft*, 30 Alabama 193. Indeed, in those cases in which it has been held that obtaining a judgment and issuing an execution is necessary before a court of equity can be asked to set aside fraudulent dispositions of a debtor's property, the reason given is that a general creditor has no lien. And when such bills have been sustained without a judgment at law, it has been to enable the creditor to obtain a lien either by judgment or execution. But when the bill asserts a lien or a trust, and shows it can be made available by aid of a chancellor, it obviously makes a case for his interference."

The trust and lien being thus established, the jurisdiction of the court of equity to entertain a bill filed by a creditor at large to protect and subject the trust fund follows.

The debts of the complainants are admitted. The first section of the answer of the corporation is as follows: "That this defendant neither admits nor denies that it is indebted to the complainants in the amounts as alleged in said bill of complaint, but believes such indebtedness to be as therein set forth."

An admitted debt will not alone entitle a party to invoke the aid of a court of equity, as all the cases show, but if the debt be admitted, and there is a lien or equity over which a court of equity exercises jurisdiction, then relief will be afforded, whether there be an exhaustion of legal remedies or not, wherever the bill shows on its face that any proceedings in the law court would necessarily be fruitless, as is said in *Case* v. *Beauregard, supra*. The principle for which I contend is expressly declared by the House of Lords in *Evans* v. *Coventry*, 5 De G., M. & G. 911; and by this court in *Mellen* v. *Moline Iron Works*, 131 U. S. 352, 357. *Sage* v. *Memphis & Little Rock Railroad*, 125 U. S. 361, 367, is also in strict analogy.

In this connection I also refer to the cases in this court in which it has been held that objection to the equity of the plaintiff's claim must be taken by demurrer or is waived: *Farley* v. *Kittson*, 120 U. S. 303, 316; *Rhode Island* v. *Massachusetts*, 14 Pet. 210, 258, 262.

And if the objection to the jurisdiction is on the ground that the plaintiff has an adequate remedy at law, it must be taken at the earliest moment, and if the defendant answers and submits to the jurisdiction of the court, it is too late for him to object that the plaintiff has a plain and adequate remedy at law. *Reynes* v. *Dumont*, 130 U. S. 354, 395; *Kilbourn* v. *Sunderland*, 130 U. S. 505, 514.

*Mr. Daniel S. Troy* filed a printed argument for appellants.

*Mr. William F. Mattingly* for the Brierfield Coal & Iron Company and Thomas J. Peter, appellees.

Mr. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The plaintiffs were simple contract creditors of the company; their claims had not been reduced to judgment, and they had no express lien by mortgage, trust deed, or other-

wise. It is the settled law of this court that such creditors cannot come into a court of equity to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims; and this, notwithstanding a statute of the State may authorize such a proceeding in the courts of the State. The line of demarcation between equitable and legal remedies in the Federal courts cannot be obliterated by state legislation. Scott v. Neely, 140 U. S. 106; Cates v. Allen, 149 U. S. 451. Nor is it otherwise in case the debtor is a corporation, and an unpaid stock subscription is sought to be reached. National Tube Works Company v. Ballou, 146 U. S. 517; Swan Land & Cattle Company v. Frank, 148 U. S. 603, 612. Nor is this rule changed by the fact that the suit is brought in a court in which at the time is pending another suit for the foreclosure of a mortgage or trust deed upon the property of the debtor. Doubtless in such foreclosure suit the simple contract creditor can intervene, and if he has any equities in respect to the property, whether prior or subsequent to those of the plaintiff, can secure their determination and protection; and here, by the express language of the bill filed by the trustee, all claimants and creditors were invited to present their claims and have them adjudicated. These plaintiffs did not intervene, though, as shown by the allegations of their bill, they knew of the existence of the foreclosure suit; neither did they apply for a consolidation of the two suits. On the contrary, the whole drift and scope of their suit was adverse to that brought by the trustee, and in antagonism to the rights claimed by him. They obviously intended to keep away from that suit, and maintain, if possible, an independent proceeding to have the property of the debtor applied to the satisfaction of their claims. But this, as has been decided in the cases cited, cannot be done. The excuse suggested, that the rule which forbids in a suit to foreclose a mortgage the litigation of a title adverse to that of the mortgagor prevented them from intervening, is not sound. Their rights, like those of the trustee and the bondholders, were derived from the corporation defendant. Each claimed under it, and the validity and amount of such claims were matters properly and

ordinarily considered and determined in a foreclosure suit.   It is true the corporation might admit the validity of any or all of the claims, and then the validity could only be a subject of inquiry as between the claimants for the purpose of determining the matter of priority, but to that extent, at least, both validity and amount are always open to contest and determination.

It is urged, however, that this court has sustained the validity of proceedings and decrees in suits of this nature, in which it appeared that the plaintiffs had not exhausted their remedies at law, and the cases of *Sage* v. *Memphis & Little Rock Railroad*, 125 U. S. 361, and *Mellen* v. *Moline Iron Works*, 131 U. S. 352, are cited as illustrations.   But passing by other matters disclosed by the facts of those cases, it will be noticed that in neither of them was the objection made at the outset, and when action on the part of the court was invoked.   Defences existing in equity suits may be waived, just as they may in law actions, and when waived, the cases stand as though the objection never existed.   Given a suit in which there is jurisdiction of the parties, in a matter within the general scope of the jurisdiction of courts of equity, and a decree rendered will be binding, although it may be apparent that defences existed which, if presented, would have resulted in a decree of dismissal.   Take the present case as an illustration : Suppose the corporation and other defendants had made no defence, and, without expressly consenting, had made no objection to the appointment of a receiver, and the subsequent distribution of the assets of the corporation among its creditors ; it cannot be doubted that a final decree, providing for a settlement of the affairs of the corporation and a distribution among creditors could not have been challenged on the ground of a want of jurisdiction in the court, and that notwithstanding it appeared upon the face of the bill that the plaintiffs were simple contract creditors ; because the administration of the assets of an insolvent corporation is within the functions of a court of equity, and the parties being before the court, it has power to proceed with such administration.   If there was a defence existing to the bills as framed, an objection to the right of these

plaintiffs to proceed on the ground that their legal remedies had not been exhausted, it was a defence and objection which must be made *in limine*, and does not of itself oust the court of jurisdiction. This doctrine has been recognized not merely in the cases cited, but also in those of *Reynes* v. *Dumont*, 130 U. S. 354; *Kilbourn* v. *Sunderland*, 130 U. S. 505; *Brown* v. *Lake Superior Iron Co.*, 134 U. S. 530. None of these cases question the proposition that if the objection is seasonably presented it will be effective.

But it is earnestly insisted that it has been held by this court, in *Case* v. *Beauregard*, 101 U. S. 688, that whenever a creditor has a trust in his favor, or a lien upon property for a debt due him, he may go into equity without exhausting his legal remedies; that it has also frequently been affirmed that the capital stock and assets of a corporation constitute a trust fund for the benefit of its creditors, which neither the officers nor stockholders can divert or waste, and several cases are cited, among them that of *Sanger* v. *Upton*, 91 U. S. 56, in which perhaps the proposition is asserted in the most direct and emphatic language, and *Terry* v. *Anderson*, 95 U. S. 628, 636, in which Chief Justice Waite made these observations: "Ordinarily, a creditor must put his demand into judgment against his debtor and exhaust his remedies at law before he can proceed in equity to subject choses in action to its payment. To this rule, however, there are some exceptions; and we are not prepared to say that a creditor of a dissolved corporation may not, under certain circumstances, claim to be exempted from its operation. If he can, however, it is upon the ground that the assets of the corporation constitute a trust fund which will be administered by a court of equity in the absence of a trustee; the principle being that equity will not permit a trust to fail for want of a trustee."

While it is true language has been frequently used to the effect that the assets of a corporation are a trust fund held by a corporation for the benefit of creditors, this has not been to convey the idea that there is a direct and express trust attached to the property. As said in 2 Pomeroy's Equity Jurisprudence, § 1046, they "are not in any true and complete

sense trusts, and can only be called so by way of analogy or metaphor."

To the same effect are decisions of this court. The case of *Graham* v. *Railroad Company,* 102 U. S. 148, was an action by a subsequent creditor to subject certain property, alleged to have been wrongfully conveyed by the corporation debtor, to the satisfaction of his judgment. And the very proposition here presented was then considered, and in respect to it, the court, by Mr. Justice Bradley, said (p. 160): "It is contended, however, by the appellant that a corporation debtor does not stand on the same footing as an individual debtor; that, whilst the latter has supreme dominion over his own property, a corporation is a mere trustee, holding its property for the benefit of its stockholders and creditors; and that if it fail to pursue its rights against third persons, whether arising out of fraud or otherwise, it is a breach of trust, and creditors may come into equity to compel an enforcement of the corporate duty. This, as we understand, is the substance of the position taken.

"We do not concur in this view. It is at war with the notions which we derive from the English law with regard to the natu:e of corporate bodies. A corporation is a distinct entity. Its affairs are necessarily managed by officers and agents, it is true; but, in law, it is as distinct a being as an individual is, and is entitled to hold property (if not contrary to its charter) as absolutely as an individual can hold it. Its estate is the same, its interest is the same, its possession is the same. Its stockholders may call the officers to account, and may prevent any malversation of funds, or fraudulent disposal of property on their part. But that is done in the exercise of their corporate rights, not adverse to the corporate interests, but coincident with them.

"When a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will then make those funds trust funds, which, in other circumstances, are as much the absolute property of the corporation as any man's property is his."

With reference to the suggestion in this last paragraph, it may be observed that the court does not attempt to determine who are proper parties to maintain a suit for the administration of the assets of an insolvent corporation. All that it decides is, that when a court of equity does take into its possession the assets of an insolvent corporation, it will administer them on the theory that they in equity belong to the creditors and stockholders rather than to the corporation itself. In other words, and that is the idea which underlies all these expressions in reference to "trust" in connection with the property of a corporation, the corporation is an entity, distinct from its stockholders as from its creditors. Solvent, it holds its property as any individual holds his, free from the touch of a creditor who has acquired no lien; free also from the touch of a stockholder who, though equitably interested in, has no legal right to, the property. Becoming insolvent, the equitable interest of the stockholders in the property, together with their conditional liability to the creditors, places the property in a condition of trust, first, for the creditors, and then for the stockholders. Whatever of trust there is arises from the peculiar and diverse equitable rights of the stockholders as against the corporation in its property and their conditional liability to its creditors. It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder.

Again, in the case of the *Wabash, St. Louis & Pacific Railway* v. *Ham*, 114 U. S. 587, it appeared that four railway corporations, owing debts, were consolidated under authority of law, and, by the terms of the consolidation agreement, the new corporation was to protect the debts of the old. Subsequently, the new corporation executed a mortgage on all its property, and in a contest between the mortgagees and the unsecured creditors of one of the constituent companies, the court held that the lien of the mortgagees was prior. In respect to this, Mr. Justice Gray (p. 594) thus stated the law: "It was contended that the property of the Toledo and Wabash Railway Company was a trust fund for all

its creditors, and that upon the consolidation the Toledo, Wabash and Western Railway Company took the property of the Toledo and Wabash Railway Company charged with the payment of all its debts. The property of a corporation is doubtless a trust fund for the payment of its debts, in the sense, that when the corporation is lawfully dissolved and all its business wound up, or when it is insolvent, all its creditors are entitled in equity to have their debts paid out of the corporate property before any distribution thereof among the stockholders. It is also true, in the case of a corporation, as in that of a natural person, that any conveyance of property of the debtor, without authority of law, and in fraud of existing creditors, is void as against them."

The case of *Fogg* v. *Blair*, 133 U. S. 534, 541, presented a similar question, and this court, by Mr. Justice Field, observed: "We do not question the general doctrine invoked by the appellant, that the property of a railroad company is a trust fund for the payment of its debts, but do not perceive any place for its application here. That doctrine only means that the property must first be appropriated to the payment of the debts of the company, before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence."

In the case of *Hawkins* v. *Glenn*, 131 U. S. 319, 332, which was an action brought by the trustee of a corporation against certain of its stockholders to recover unpaid subscriptions, and in which the defence of the statute of limitations was pleaded, Chief Justice Fuller referred to this matter in these words: "Unpaid subscriptions are assets, but have frequently been treated by courts of equity as if impressed with a trust *sub modo*, upon the view that, the corporation being insolvent, the existence of creditors subjects these liabilities to the rules applicable to funds to be accounted for as held in trust, and that, therefore, statutes of limitation do not commence to run

in respect to them until the retention of the money has become adverse by a refusal to pay upon due requisition."

These cases negative the idea of any direct trust or lien attaching to the property of a corporation in favor of its creditors, and at the same time are entirely consistent with those cases in which the assets of a corporation are spoken of as a trust fund; using the term in the sense that we have said it was used.

The same idea of equitable lien and trust exists to some extent in the case of partnership property. Whenever, a partnership becoming insolvent, a court of equity takes possession of its property, it recognizes the fact that in equity the partnership creditors have a right to payment out of those funds in preference to individual creditors, as well as superior to any claims of the partners themselves. And the partnership property is, therefore, sometimes said, not inaptly, to be held in trust for the partnership creditors, or, that they have an equitable lien on such property. Yet, all that is meant by such expressions is the existence of an equitable right which will be enforced whenever a court of equity, at the instance of a proper party and in a proper proceeding, has taken possession of the assets. It is never understood that there is a specific lien, or a direct trust.

A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor. That is certainly the general rule, and if there be any exceptions thereto they are not presented by any of the facts in this case. Neither the insolvency of the corporation, nor the execution of an illegal trust deed, nor the failure to collect in full all stock subscriptions, nor, all to-

gether, gave to these simple contract creditors any lien upon the property of the corporation, nor charged any direct trust thereon.

With respect to the propriety of the decree of dismissal in this suit after the entry of the decree of foreclosure in the trustee suit, the case of *Stout* v. *Lye*, 103 U. S. 66, is conclusive. Indeed, that case is conclusive of every question in this, except such as arise from the fact that the debtor is a corporation rather than an individual. It appeared that, pending a foreclosure suit, J. W. and J. O. Stout obtained a judgment against the mortgagor on an unsecured claim. They thereupon instituted a suit, making both mortgagee and mortgagor parties defendant, to set aside the mortgage as illegal; or, if not illegal, to have its amount reduced by certain payments of usurious interest. While this suit was pending the foreclosure suit passed into decree, the Stouts having never been made parties or entered an appearance in that suit. Thereupon their suit was dismissed, and such dismissal was held by this court proper, on the ground that the Stouts, being simple contract creditors at the time the foreclosure suit was commenced, were not only unnecessary but improper parties. "If they had been made parties when the suit was begun, they could have done nothing by way of defence to the action until they had acquired some specific interest in the mortgaged property. As creditors at large they were powerless in respect to the foreclosure proceedings, but when they obtained their judgment, not before, they were in a position to contest in all legitimate ways the validity and extent of the superior lien which the bank asserted on the property, in which, by the judgment, they had acquired a specific interest." And on the further ground that the mortgagor represented in the foreclosure suit not merely himself, but all parties who, like the Stouts, acquired any interest in the property since the commencement of that suit.

So here these plaintiffs were simple contract creditors when the trustee's suit was commenced. That suit passed to decree of foreclosure, and up to that time these plaintiffs had acquired no specific lien upon the property. They entered no appear-

ance in that suit; did not intervene or claim any rights in the property, and they were represented in that suit by the corporation, the party under whom both they and the trustee claimed. A decree of dismissal was, therefore, proper. It appears in the record as a decree upon the merits. It should have been for want of jurisdiction, and to that extent the decree as entered will be modified. The appellants will be charged with all the costs in the case.

*Dismissed for want of jurisdiction.*

MR. JUSTICE BROWN and MR. JUSTICE JACKSON dissented.