## COLER v. ALLEN et al.

### (Circuit Court of Appeals, Ninth Circuit.    April 7, 1902.)

#### No. 713.

**1. APPEAL—PARTIES.**

On an appeal to the circuit court of appeals, citation need be served only on those parties whose interests are affected by the decree or order appealed from.

**2. CORPORATIONS—VALIDITY OF MORTGAGE—EFFECT OF INSOLVENCY.**

A corporation, so long as it is a going concern and engaged in the active prosecution of its business, may lawfully execute a mortgage on its property, if done in good faith, to secure an extension of a prior indebtedness and further advances to be used in its business, although it is at the time financially embarrassed, or even insolvent; and there is nothing in the law of Washington, as established by the decisions of its supreme court, which renders such a mortgage invalid as against other creditors

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

The appellant, F. W. Coler, appeals from a decree of the circuit court dismissing his bill of intervention after the court had sustained a demurrer thereto and he had refused to further plead. The appellant was a judgment creditor of the Pacific Northwest Packing Company, a corporation, and by his bill of intervention he sought to annul and set aside a mortgage which had been executed by the corporation to Henry F. Allen, and which was in the progress of foreclosure at the suit of said Allen. The mortgage had been executed on May 11, 1900, to secure the sum of $25.734 and advances to be made by the mortgagee not to exceed $10,000. In the bill brought to foreclose the mortgage it was alleged that after the execution of the mortgage, and in the months of May and June, 1900, the mortgagee had made advances under said agreement to said corporation in excess of said sum of $10,000. The complainant in the foreclosure sought to enforce his mortgage lien to the full amount of the said sum so owing on May 11, 1900, and the subsequent advances. From the pleadings it appears that the mortgagor was engaged in the business of catching and canning salmon, and was possessed of various kinds of property, which it used in connection with its business. All of its property was included in the mortgage to Allen, and in its answer to the bill of complaint in the foreclosure suit it alleged that its indebtedness to the complainant therein arose out of an arrangement which he had with the complainant by virtue of which the latter was to advance and did advance divers sums of money from time to time to the corporation, and was to receive, and did receive, in return the total output of the corporation's cannery for his reimbursement. In the foreclosure suit a receiver was appointed, and all the mortgaged property passed into his possession. The appellant in his bill of intervention alleged that by reason of the receivership all the property of his judgment debtor had been placed beyond the reach of execution, and he prayed the court to set aside the mortgage, and permit him to share equally with the mortgagee in the assets of the corporation. He further alleged in his bill that he had "no knowledge or information concerning the averments" of the mortgagee's bill relating to the consideration of the mortgage or the advances made or to be made thereunder, and he made denial of the legal conclusion that the mortgage was valid. This matter so set forth in the intervener's bill was clearly insufficient to impeach the mortgage or to raise an issue as to any of the facts pleaded in the mortgagee's bill. The appellant impliedly admits that such is the case, for he rests his cause upon the appeal solely upon the ground that he has shown that he is entitled to equitable relief upon his allegation that the corporation was insolvent at all times in the month of May, 1900, and at the time of the giving of the mortgage to the complainant Allen, and that its liabilities

114 F.—39

grossly exceeded its assets, and "that at the time of giving the mortgage the defendant the Pacific Northwest Packing Company had reached a point where its debts were greater than its property, where it could not pay in the ordinary course, where its business was no longer profitable, and when it ought to be wound up and its assets distributed." The allegations of fact in this charge against the validity of the mortgage are that the corporation was insolvent; that it had reached a point where it could not pay in the ordinary course, and where its business was no longer profitable. The remainder of the allegation states the remedy which the pleader averred was appropriate to its condition.

Bausman & Kelleher, for appellant.

Harold Preston, E. M. Carr, and L. C. Gilman, for appellees.

Before McKENNA, Circuit Justice, and GILBERT and ROSS, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

A motion is made to dismiss the appeal, on the ground that neither the corporation which executed the mortgage, nor its predecessor in interest, nor Austin Claiborne, W. M. Williams, or W. A. Keene, who were parties to the foreclosure suit by reason of having been made trustees of certain of the mortgaged property, were served with the citation on the appeal. In the suit of foreclosure the appellant was permitted by the court to intervene. To his bill of intervention but one of the parties to the suit appeared. Allen, the complainant in the suit, filed a demurrer. The order which was appealed from was that the complaint in intervention be dismissed, and "that the complainant be not required to further answer the said complaint." This order affected none of the parties to the suit except Allen, and afforded none of them the right to appeal or to be heard in the appellate court. The appellees rely upon the case of Davis v. Trust Co., 152 U. S. 590, 14 Sup. Ct. 693, 38 L. Ed. 563, in which it was said "that all the parties to the record who appear to have an interest in the order or ruling challenged must be given an opportunity to be heard." But in what way are any of the other parties to the record interested in the order which is appealed from? The insolvent mortgagor can have no interest in the determination of the legal question which is presented upon this appeal, and certainly none of the other parties to the suit are in any way affected thereby. It is sufficient if the case is so presented on the appeal "that the appellate tribunal shall not be required to decide a second or third time the same question on the same record." Masterson v. Herndon, 10 Wall. 416, 19 L. Ed. 953.

Does the bill of intervention present a state of facts such as to entitle the intervener to equitable relief? The courts of the United States in dealing with the question of the right of an insolvent corporation to prefer a creditor have in all cases, except where the matter is the subject of statutory regulation, held that the corporation had the same right and authority to make such preference that an individual would have. In Fogg v. Blair, 133 U. S. 534, 10 Sup. Ct. 338, 33 L. Ed. 721, referring to the doctrine that the assets of an insolvent corporation are a trust fund for its creditors, Mr. Justice Field said:

"That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders. It does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to bona fide purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence."

In Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, the court said:

"A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien."

See, also, Sanford Fork & Tool Co. v. Howe, Brown & Co., 157 U. S. 312, 15 Sup. Ct. 621, 39 L. Ed. 713.

But it is said that a different rule has been established in the state of Washington by the decisions of the supreme court of that state in Thompson v. Lumber Co., 4 Wash. 600, 30 Pac. 741, 31 Pac. 25, Conover v. Hull, 10 Wash. 673, 39 Pac. 166, 45 Am. St. Rep. 810, and Biddle Purchasing Co. v. Port Townsend Steel Wire & Nail Co., 16 Wash. 681, 48 Pac. 407. In the first of these cases a mortgage to secure demand notes was given on all the property and assets of a corporation. No time for payment was mentioned in the mortgage, but it was stipulated that until default the mortgagor should remain in possession. The debt which the mortgage was given to secure had long been overdue. For many months the corporation had been embarrassed, and could pay nothing on its debts, but was merely using up its property, and its business was practically closed, of all of which facts the court found that the mortgagee was informed. The court remarked of this mortgage that "it was designed to act as a shield between the corporation and its other creditors * * *"; and that "no device can receive the countenance of the court which provides for an indefinite continuance of its corporate life under the protection of a mortgage against the protest of those who are entitled to share in its property." In Conover v. Hull the court denied the right of the corporation to prefer an antecedent debt upon the ground that the corporation was not only insolvent, but that there was collusion between its officers and the preferred creditor, all of which was known to the latter. In Biddle Purchasing Co. v. Port Townsend Steel Wire & Nail Co. the insolvent corporation simultaneously executed several mortgages to creditors to secure prior indebtedness. The corporation was seriously embarrassed, and at the date of giving the mortgage and for some time prior thereto had been unable to operate its works and plant, and they were idle, and "for a long time prior thereto" it had been insolvent. Its purpose in giving the mortgage was to prefer the secured creditors and to hinder and delay the others. Under these circumstances, the court applied the doctrine of the trust fund and set aside the preference. In the case before the court the facts differ widely from the facts in the cases so cited. It must be borne in mind that this is not the ordinary case of an insolvent corporation selecting one creditor to whom it owed an antecedent debt and securing the same to the exclusion of others. The mortgage in the case at bar

was taken not only to secure a prior indebtedness, but a large proportion of the amount secured was a new consideration, money to be advanced for the use of the corporation in its business to the amount of $10,000. The corporation had not to any extent closed its business, nor is it alleged that it was embarrassed further than that it was insolvent. Its business was not brought to a close until several months later. Even if the decisions of the supreme court of the state of Washington are held to sanction the general doctrine that an insolvent corporation cannot prefer one of its creditors, the doctrine has not been held applicable to a mortgage given in whole or in part for a valuable consideration moving at the time of its execution. The mortgagee in this instance, according to the pleadings, furnished the corporation funds for its use in the course of its business. His mortgage was taken for money already advanced and for money thereafter to be advanced. It is not alleged that he had any knowledge of the insolvency of the corporation or that the officers of the latter intended to give him a preference or to hinder or delay other creditors. The corporation was a going concern. At the time of giving the mortgage and receiving the advances it was apparently preparing for the annual run of salmon which might.be expected to furnish it the means of discharging or reducing its liabilities. The supreme court of Washington, in adopting the doctrine of the decisions above noted, was guided largely by the case of Rouse v. Bank, 46 Ohio St. 493, 22 N. E. 293, 5 L. R. A. 378, 15 Am. St. Rep. 644. But the supreme court of Ohio in a later case (Damarin v. Iron Co., 47 Ohio St. 581, 26 N. E. 37) held that a mortgage executed by a corporation to secure a pre-existing .debt is not necessarily invalid for the reason that the company was known to be insolvent, where the company was at the time in the possession of its property and in the active prosecution of its business, and intended to continue therein unless prevented by other creditors, and the object of the mortgage was not to prefer the creditor, but to obtain an extension of credit. Said the court:

"The right of a company, though embarrassed, to continue its business and retrieve its fortunes, if possible, must be conceded to it as well as to natural persons, and this right necessarily carries with it the power to obtain an extension of credit by giving a mortgage upon its property to such of its creditors as are unwilling to give further time unless so secured. When this power is fairly and honestly exercised. with no purpose at the time of immediately abandoning business or making an assignment, the validity of a security so obtained cannot be questioned."

We think, in view of all the facts set forth in the bill of intervention and the law applicable thereto, that the appellant has shown no ground sufficient to justify a decree setting aside the mortgage.

The decree of the circuit court is affirmed.