## ROBERTS v. CENTRAL TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Ninth Circuit. February 23, 1904.)

### No. 984.

1. LIENS—CLAIM AGAINST RAILROAD COMPANY—PRIORITY OF MORTGAGE.

An order, given by a railroad company, directing its treasurer to pay the holder a sum "out of the proceeds of the sale of the first bonds sold of this company," does not create a lien on the property of the company, afterwards sold and transferred before the issuance of any bonds to a second company, which assumed payment of the debt, so as to take precedence of a mortgage executed by the purchasing company to secure an issue of bonds, but the claim of the holder is subordinate to the lien of such mortgage.

Appeal from the Circuit Court of the United States for the Northern District of California.

For opinion below, see 110 Fed. 70.

This is a suit brought by the Central Trust Company of New York against the California & Nevada Railroad Company and others, to foreclose a mortgage made by said railroad company to secure an issue of bonds. Mary E. Roberts, appellant herein, was named as a party defendant having or claiming

to have some interest in the property. The claim of Mrs. Roberts is evidenced by a written instrument, draft, or order, which reads as follows:

"No. 64.                                     San Francisco, September 10, 1881.

"$5,000.    To C. F. Burrell, Treasurer California & Nevada Railroad Co.: Pay to John T. Davis, or order, five thousand dollars ($5,000), payable out of the proceeds of the sale of the first bonds sold of this company.

"D. M. Walker, President.
"E. A. Phelps, Secretary.

"Accepted to be paid as herein specified.
"C. F. Burrell, Treasurer."

Indorsed: "Pay to the order of Mrs. Mary E. Roberts.
"John T. Davis."

On the day this loan was made, a resolution was passed by the board of directors authorizing the execution of this writing, which resolution was duly recorded in the minute book of the corporation. The cause was referred to a master, and the facts relative to her claim were reported by the master as follows:   •

"A corporation, known as 'The California & Nevada Railroad Company,' was organized under the laws of the state of California, on the 25th day of March, 1881, for the purpose of constructing and operating a railroad from the city of Oakland, Cal., to the state line between the state of California and the state of Nevada, at or near the town of Bodie, Cal., a distance of about 250 miles. Said railroad company got rights of way, graded some 12 miles of road, and laid 5 miles of rails.   On the 10th day of September, 1881, Mary E. Roberts loaned or advanced to said railroad company the sum of $5,000, upon the representation of John T. Davis, one of the promoters and president of said company, that the money was needed to push the working of the road, and received therefor a demand upon the treasurer of said company for the sum of $5,000, 'payable out of the proceeds of the sale of the first bonds sold of this company.'   Thereafter, on the 25th day of March, 1884, a new corporation was organized, called the 'California & Nevada Railroad Company.'   The new corporation was composed of nearly the same persons as the first company, and was organized for the same purposes.   The first corporation, on the 25th day of March, 1884, sold and transferred to the second company its entire road and properties.   As a part of the consideration of the transfer, the second company agreed to assume all the outstanding obligations of the first company. Thereafter, on the 10th day of April, 1884, the second company, having acquired possession of all the property of the first company as aforesaid, executed a mortgage or deed of trust to the Central Trust Company of New York, the complainant in this action, which mortgage covered all the property then owned or which might thereafter be acquired by said company.   Said mortgage was given to secure the payment of 5,000 bonds, to be issued by said railroad company, of the denomination of $1,000 each, payable in 30 years, with interest at the rate of 6 per cent. per annum, payable semiannually, 'to pay for the construction, equipment, and completion of the railroad.'   In pursuance of said deed of trust or mortgage, 545 of the bonds were issued by said railroad company.   The railroad company having made default in the payment on said bonds, this action was brought by the trustee to foreclose the mortgage.   On the 3d day of June, 1886, an action was commenced in the superior court of the city and county of San Francisco, by Mary E. Roberts, upon the written instrument aforesaid, to recover the sum of $5,000 and interest.   A writ of attachment was issued and levied upon the whole property of said railroad company.   Said attachment has not been discharged, and said action is still pending.   The defendant Mary E. Roberts in her answer prays that it may be adjudged that the defendant railroad company is indebted to her in the sum of $5,000, with interest, and that the lien acquired by her under the writ of attachment aforesaid is a prior lien upon the properties of the said railroad company to any and all, bonds issued after June 3, 1886, the date of the levy of the attachment aforesaid."

The final decree in the court below is adverse to Mrs. Roberts' contention. Hence this appeal.

John A. Wright, for appellant.

Platt & Bayne (Galpin & Bolton, of counsel), for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The contention of appellant is that the claim of Mrs. Roberts constitutes an equitable lien upon the property mortgaged, and takes priority in marshaling the assets over all the bondholders, because before the mortgage was given she had an assignment of the "proceeds of the first bonds sold of this company"; and she claims that the Central Trust Company took the mortgage with notice of this equitable assignment to her, and that when the first bonds were sold the proceeds must be regarded in equity as a fund having impressed on it a lien in the nature of a trust by virtue of the equitable assignment held by her. It is not claimed that any bonds were issued prior to the execution of the mortgage herein sought to be foreclosed. The mortgage was given to secure the issuance of bonds. There never was any sale of bonds for money. There were no cash subscriptions for the bonds. They were all issued to contractors for construction or repair work, or for salaries and professional services. There were 545 bonds issued, but of that number only 345 bonds were found by the master to have been legally issued. Under the facts of this case it became necessary to execute the mortgage in order to secure the issue of the bonds. When the new corporation was organized, it assumed all the outstanding obligations of the old corporation, and undoubtedly the new corporation is liable, in a proper proceeding, for the payment of that debt. But the sole question here is whether Mrs. Roberts is entitled to a prior lien upon the proceeds of the foreclosure sale, to wit, upon the railroad.

It is conceded by both parties that her rights in the premises must be determined by the strict terms of the order or draft. This document was an acknowledgment of the sum of money received from her "to push the working of the road," and an agreement that the demand should be payable out of the proceeds of the sale of the first bonds sold of this company. It did not of itself create a lien upon the property of the corporation. It did not constitute an agreement by the company to set apart any specific earnings or property in the hands of a third person to meet the interest or principal due upon Mrs. Roberts' claim. And herein it differs from the principles announced in Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999, and other cases cited by appellant. It was a mere personal promise on the part of the railroad company that it would pay the claim in a certain way out of a fund which never came into existence. The attachment suit was not brought until after the lien of the mortgage attached. The demand of Mrs. Roberts is a meritorious one, but it is subordinate to the lien secured by the mortgage.

In Fogg v. Blair, 133 U. S. 534, 540, 10 Sup. Ct. 338, 340, 33 L. Ed. 721, it was held that a liquidated claim against a railroad company, not converted into judgment, which another railroad company, pur-

chasing its road and property, agrees with the selling company to assume and pay as part of the consideration, does not thereby become a lien upon the property, so as to take priority over the lien of a mortgage made by the purchasing company to secure an issue of bonds. Mr. Justice Field, in delivering the opinion of the court, among other things, said:

"The property of a railroad company is not held under any such trust to apply it to the payment of its debts as to restrict its use for any other lawful purpose, it matters not how meritorious the demand of the creditor may be. He must obtain a lien upon the property of the company, or security in some other form, or he will have to take his chances with all other creditors to obtain payment in the ordinary course of legal proceedings for the collection of debts.   *   *   *   There is no evidence in the record before us that the parties who took the bonds issued by the St. Louis, Hannibal & Keokuk Railroad Company had any notice, actual or constructive, of the demand of the complainant. But, if they had, it would not have affected their rights. That demand was not then reduced to judgment, and created no lien upon the property of the company, nor any restriction upon the company's right to use it for any lawful purpose. The bonds were given to raise the necessary funds to complete the road of the company, and the mortgage was executed to secure their payment. They were negotiable instruments, and in the hands of the purchasers cannot be impeached for any neglect of the company issuing them to pay the demands of other creditors. We are unable to perceive any ground upon which their priority over the claim of the appellant can be in any way impaired. We do not question the general doctrine, invoked by the appellant, that the property of a railroad company is a trust fund for the payment of its debts, but do not perceive any place for its application here. That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders. It does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to bona fide purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence."

In Cushing v. Chapman (C. C.) 115 Fed. 237, it was claimed by the complainant that under the averments of his bill Newton & Co., by a certain contract, "obtained an equitable estate or title to 47 of said bonds to be first thereafter issued, and as soon as issued the railway company held them in trust for Newton & Co." The bill discloses that the 47 bonds were to be a part of a total issue of $1,550,000 of equal dignity, secured by a first mortgage on the railway's property as the full limit of such issue. This contention of the complainant depended upon the terms of a written contract between the railway and said Newton & Co., which reads as follows:

"In consideration of said sale and assignment [that is, the assignment of a certain judgment Newton & Co. held against the Tennessee Railroad Company, and assumed by the Tennessee Railway], the party of the second part [the Tennessee Railway] agrees to transfer and deliver to the parties of the first part [Newton & Co.] its first mortgage bonds, to be hereafter issued in the construction of its railway, to the amount of said decree, one dollar of bonds, at their face value, for each dollar of the amount of said decree. The delivery of said bonds to be made as soon as practicable, and as early as any issue of bonds are delivered to any one else in the work of constructing said railway."

Judge Philips, in his opinion, said:

"In its fullest import and broadest construction, this is an executory contract or agreement to thereafter deliver to Newton & Co. 47 of the first mortgage bonds to be thereafter issued by the railway 'in the construction of its

railway,' and 'to be made as soon as practicable, and as early as any issue of bonds are delivered to any one else in the work of constructing said railway.' I understand the law to be that a mere promise, however clear or solemn in character, to pay a debt out of a particular fund, does not operate as an equitable assignment of the fund, and especially so when it is a part of a mass of property to be thereafter created. To constitute such an equitable assignment, there must be such an actual or constructive appropriation of the fund or subject-matter 'as to confer a complete and present right on the party meant to be provided for, although the circumstances do not admit of its immediate existence'; that, if the holder of the fund could retain control over it, with the power, sua sponte, on his part, to satisfy the promise in cash, it is fatal to an equitable assignment."

And he cited numerous authorities to sustain his position. See, also, National Bank v. Allen, 90 Fed. 545, 551, 33 C. C. A. 169; Coler v. Allen, 114 Fed. 609, 611, 52 C. C. A. 389; Hollins v. Brierfield C. & I. Co., 150 U. S. 371, 384, 14 Sup. Ct. 127, 37 L. Ed. 1113; Silent Friend Mining Co. v. Abbott (Colo. App.) 42 Pac. 318.

The decree of the Circuit Court in relation to appellant's claim was correct, and is affirmed.