ENGLAND et al. v. RUSSELL et al.

(Circuit Court, S. D. Ohio, W. D.   January 16, 1896.)

No. 4,842.

1. INSOLVENCY—VALIDITY OF PREFERENCES—GIVING MORTGAGES.
    A statute which declares that all assignments in trust, made in contemplation of insolvency, with intent to prefer one or more creditors, shall inure to the benefit of all creditors equally (Rev. St. Ohio, § 6343), does not extend to the case of an insolvent debtor giving mortgages to certain creditors with intent to prefer them separately, and without creating any trust in favor of any other party, and such preferences are valid.    And it is not sufficient to bring the case within the statute to aver that the creditor receiving such mortgage holds in trust for himself and for the assignor, for this is a mere averment of a legal conclusion.

2. CREDITORS' BILL—JURISDICTION OF FEDERAL COURTS—STATE STATUTES.
    Simple contract creditors, whose claims have not been reduced to judgment, can have no standing in a federal court of equity upon a bill to set aside an alleged fraudulent conveyance; and this rule is not affected by the fact that the state statute authorizes such a proceeding in the courts of the state.

3. SAME—TRUSTS.
    A statute which declares all transfers or conveyances of property made with intent to defraud creditors void at the suit of any creditor, and authorizes the probate judge of the proper county, after any such transfer has been adjudged void by a court of competent jurisdiction, to appoint a trustee to collect and administer the property so transferred or conveyed, for the benefit of creditors in general (Rev. St. Ohio, § 6344), does not operate to create a trust in favor of creditors immediately on the making of such a conveyance, so as thereby to enable a mere general creditor to

maintain a bill in a federal court to set aside the conveyance. The trust only arises after an adjudication vacating the conveyance, and hence there is no trust at the commencement of the suit, by which the federal equity jurisdiction can be supported.

4. SAME.

A mere general creditor, who files a bill in a federal court of equity to set aside an alleged fraudulent conveyance, is not enabled to maintain the same merely by amending his bill so as to adopt, as the amount sued for, an amount which is admitted to be due by the answer; for, in order to maintain such a bill, there must be, in addition to an acknowledged debt, some lien or specific right or equity in favor of the creditor in the property in question.

## In Equity.

The complainants, creditors at large of Harriet V. Russell et al.; partners doing business as Russell, Vincent & Williams, filed a creditors' bill setting up a claim for $2,636.42, with interest, on account of goods sold and delivered.

The bill charges that said defendants executed and delivered to Levi D. York, a chattel mortgage; also, to the defendant Henry Vincent, a chattel mortgage upon the same goods described in the mortgage to York; also, on the 5th of July, 1895, a mortgage upon certain real estate situated in the city of Portsmouth, Scioto county, Ohio, and a subsequent mortgage upon the same to the defendant Henry Vincent; also, certain other mortgages to other defendants.

It is averred that prior to, and at the time of, the execution and delivery of each and all of said mortgages, the mortgagors were, and continued to be at the date of the filing of the bill, wholly insolvent, and unable to pay their matured and maturing obligations, amounting to over $104,000, and that they have no property subject to execution.

It is further averred that all said chattel mortgages were executed and delivered without any, or, at most, with a grossly inadequate, consideration, in contemplation of insolvency, and with intent to prefer the mortgagees to the exclusion of the complainants and of all the other creditors of said firm, and also with intent to hinder, delay, and defraud the complainants and all other creditors of said firm, as the grantees of said mortgages well knew.

It is further averred that the defendant York, at the time of the execution and delivery of the real and chattel mortgages to him, took the securities and property therein described, with the consent and agreement of Russell, Vincent & Williams, to hold the same in trust for himself and the said firm and its members, agreeing to account to them for any surplus remaining after the payment of his pretended claim, amounting to $29,900, notwithstanding which he is permitting the firm and its individual members to exercise control over all said assets and property, and to change the material employed in the business of said firm, which was included in said mortgages, into manufactured stock, to sell the same and retain for themselves the profits and benefits of such sales; to collect for their own use the outstanding accounts and other claims of the business; and to continue for their own benefit the business of manufacturing shoes (which was the business in which the firm was engaged), —and that thereby the said parties sought to place said property and securities which were included in said mortgages beyond the reach of execution and of other process of law, and to withhold the same from the complainants and other bona fide creditors of said firm, and hinder and delay them in the proper collection of their claims, all of which was done with the knowledge and consent of the other defendants holding mortgages upon the same property and securities.

The prayer of the bill is that said mortgages be held to be fraudulent, null, and void, as against the complainants and other creditors of said firm, and that the same, and said transactions, be declared and held to have been made for the purpose and with the intent to hinder, delay, and defraud the complainants and other creditors of said firm, and that all said property so mortgaged and held by the defendants be declared to be held in trust for the benefit of all the creditors of said firm, excepting those who may receive a priority therein as allowed by law; also, that said mortgagors and mortgagees of said

personal property, securities, and assets be temporarily restrained from transferring, assigning, selling, or disposing of any of the moneys, property, or assets described and included in said mortgages; that a receiver be appointed to take charge of all said property and assets; and for the marshaling and settling of valid liens and claims.

There are other averments of the bill which it is not necessary to refer to for the purpose of the opinions.

The defendants constituting the firm of Russell, Vincent & Williams answered, denying that they were indebted to the complainants on the account set forth in the bill in the sum of $2,636.42, or that they were indebted thereon in more than the sum of $2,583.64.

They also deny. the insolvency of the firm of Russell, Vincent & Williams. Admitting that they had not been able to pay at maturity all of their obligations, they averred that they were possessed of assets subject to execution more than sufficient to pay off and discharge all their indebtedness.

They deny that the mortgages set forth in the bill were given without consideration, or upon grossly inadequate consideration, or in contemplation of insolvency, or with intent to hinder, delay, or defraud the complainants or other creditors; but, on the contrary, aver that each and all of said mortgages were given in good faith, in the regular course of business, to secure bona fide debts then existing, the true amount of which was expressed in said mortgages.

They denied that the mortgage given to Levi D. York was given in trust, as averred in the bill, or otherwise, or that he agreed to account to the firm, or to the members thereof, for any surplus remaining after the payment of his claim, or that said mortgages were made for any purpose other than to secure and indemnify the mortgagee as indorser and accommodation maker of certain negotiable paper wholly for the benefit of the defendants Russell, Vincent & Williams.

Admitting that said York was permitting said firm to work up the material on hand into manufactured stock, and to sell the same, they denied that he was permitting said firm to reap and retain for itself the profits and benefits of such sales, or to collect for their own use the outstanding accounts and other claims of the business, or to continue for their own benefit their business of manufacturing shoes; but, on the contrary, they averred that said York was permitting the firm and its members to continue the business of manufacturing shoes, and the sale thereof, for his benefit, and for the purpose of making his security more effectual, and that said firm was required to account to said York for the proceeds of said sales, and all the profit and income therefrom; and they averred that such disposition of said mortgaged property was for the benefit of all the creditors of said firm. They denied that, in the execution of the mortgages mentioned in the bill, they attempted to delay or defraud any creditor, but, claiming that said mortgages are bona fide, to secure claims of the mortgagees, admit that it was their purpose also to secure an extension of time, to enable them to continue business for the benefit of all their creditors; and they averred that they have on hand a large amount of raw material, which, if sold as such, will bring but little,—not more than sufficient to satisfy the mortgage claims,—but which, if manufactured into shoes, and sold in the regular course of business, will produce a sum of money sufficient, and more than sufficient, as defendants believe, to satisfy all the debts and claims against them in full.

The answer was filed on the 16th of September, 1895.

On the 19th of October, 1895, the complainants, by leave of court, amended their bill by averring that there was due and owing to the complainants from the defendants Russell, Vincent & Williams the sum of $2,583.64, being the amount which said firm had admitted by its answer, that it was indebted to the complainants; and the complainants agreed to, and adopted by said amendment, said sum of $2,583.64 as the proper sum due to them, and the same was substituted for the amount stated in the original bill.

In the absence of Judge SAGE and Judge TAFT from the district and circuit, in the summer of 1895, Judge CLARK, of the Middle district of Tennessee, having been designated to sit in and hold the circuit court at Cincinnati, was applied to for a restraining order, as prayed by the bill.

The application was rested largely upon sections 6343 and 6344 of the Revised Statutes of Ohio, which are as follows:

"Sec. 6343. All assignments in trust to a trustee or trustees, made in contemplation of insolvency, with the intent to prefer one or more creditors, shall inure to the equal benefit of all creditors in proportion to the amount of their respective claims, and the trusts arising under the same shall be administered in conformity with the provisions of this chapter.

"Sec. 6344. All transfers, conveyances or assignments made by a debtor or procured by him to be made with intent to hinder, delay or defraud creditors, shall be declared void at the suit of any creditor; and the probate judge of the proper county, after any such transfer, conveyance, or assignment shall have been declared, by a court of competent jurisdiction, to have been made, with the intent aforesaid, or in trust with the intent mentioned in the next preceding section, shall on the application of any creditor, appoint a trustee according to the provisions of this chapter, who, upon being duly qualified, shall proceed by due course of law, to recover possession of all property so transferred, conveyed, or assigned, and to administer the same as in other cases of assignments to trustees for the benefit of creditors: provided, however, that any creditor instituting a suit for the purpose aforesaid shall cause notice of the pendency and object thereof to be published for at least four consecutive weeks in some newspaper printed or of general circulation in the county in which said suit shall be pending; and all creditors who shall, within fifteen days next after the expiration of said notice, file an answer in said action in the nature of a cross-petition, praying to be made parties thereto, and setting forth the nature and amount of their respective claims, and shall secure the payment of their pro rata share of the costs and expenses of such action, including reasonable counsel fees, in proportion to the amount of their said claims, either by a deposit of money, or by an undertaking given to the plaintiff in such sum, and with such security as the court or clerk thereof shall require and approve, shall be first entitled, with the plaintiff, to the benefits of such transfer, conveyance or assignment, in proportion to the amounts of their respective claims; and in case of such notice being given, the court in which such transfer, conveyance, or assignment shall have been declared to have been made with the intent aforesaid, may proceed fully to administer the trust, both as to the creditors who are parties as aforesaid, and those who have not come in and been so made parties, distributing to the latter the surplus, if any, after satisfying the claims of those who have preference as aforesaid; but if such court shall not so administer the trust, or if such a notice shall not have been given, the said court shall forthwith, on declaring the intent aforesaid, cause a copy of the judgment to be certified to the proper probate court, which shall, on its own motion, appoint a trustee as in this chapter provided; and after the costs and expenses aforesaid, and the claims of the aforesaid preferred creditors shall have been paid by said trustee, the residue in his hands, if any, shall inure to the equal benefit of the remaining creditors, in proportion to the amount of their claims."

C. B. Matthews, Ernest Rehm, N. W. Evans, Otto Pfleger, and J. D. Brannon, for complainants.

A. C. Thompson and A. T. Holcomb, for respondents.

CLARK, District Judge. When the bill in this case was first presented to me for a restraining order, I was of opinion, upon the authority of Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977; and Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127,—that the plaintiffs, being creditors at large, were without standing in this court to make the questions made in this bill, and that the restraining order should be denied for want of jurisdiction in the court. The plaintiffs' counsel maintained earnestly that by virtue of the Ohio statutory law, as construed by the court of highest authority in the state of Ohio, a trust existed by

reason of the transaction set forth and impeached in the bill, and that this trust arose at the time of the conveyance impeached, and was therefore a trust and equity existing in creditors generally,— those without as well as those with judgment,—and that the trust thus created in their favor by statute was one which existed before the filing of the bill, and was not a right which arose with the filing of the bill, and that any beneficiary might come into a court of equity to enforce his interest in this trust. In other words, the position was, and now is, that this statute creates an equitable right, and enlarges equitable jurisdiction in that respect, which the courts of the United States may enforce, the requisite citizenship existing, and that it is not a statute affecting the remedy, or changing the form of procedure. As this position was maintained by eminent counsel of the highest character, I felt that possibly it would be assuming too much to overrule the contention on a mere application for a restraining order, and that it would be more consistent with safe procedure, and would better maintain the purpose of the law, to give both sides a hearing in any controversy, to grant the restraining order, and set the application at a time and place where it could be heard by one of the circuit judges, or Judge SAGE, who would have the advantage of their familiarity with this Ohio statutory law. The right was reserved to the defendants, however, to bring on the application sooner, if the circumstances of the case were such as to make this necessary, and this they have done; and, as it is stated that some time will elapse before either Judge TAFT or Judge SAGE could act on the matter, I feel that it is my duty now to dispose of the application, as delay cannot be allowed in regard to an issue on extraordinary process. The position taken by the plaintiffs has been maintained with great diligence, and has been rendered very plausible indeed; but, after such consideration as I can now give this case, I am unable to concur in this view. It is true that there are strong intimations in the cases which tend to support the plaintiffs' contention. Stating my own view of this very briefly, it is this: That the questions of the effect of the statutes relied on, and their interpretation by the court of highest authority in the state of Ohio, are questions which go to the merits of the controversy presented by this bill, and that they in no wise determine, nor could determine, for the courts of the United States, the standing which the plaintiff must have to entitle him to call in question the conveyances which are impeached as fraudulent. This is a question of jurisdiction, as affecting the right of the plaintiff to come into equity and allege that his debtor's transaction is fraudulent. It is certain that the plaintiff cannot get along with the case, and that no court can grant the relief sought except by virtue of its power to declare the transaction fraudulent. It is also, I think, apparent that whether a conveyance is fraudulent or not, within the meaning of this statute, is the central fact in the case, on which the right and remedy depend; and I think that, upon the authority of the cases before cited, the plaintiff has no standing in the courts of the United States to invoke equitable interposition without a judgment at law.

This being my view, the application for an injunction is denied, and the restraining order heretofore granted is dissolved. Being of this opinion, I would, of my own motion, dismiss this bill for want of jurisdiction in this court, except that under section 7 of the act of March 3, 1891 (26 Stat. 826), establishing the circuit court of appeals, the plaintiffs may within 30 days take an appeal from this order, and the case in the circuit court of appeals is one that takes precedence; and this will enable them to have the question speedily passed upon, and the question as effectually settled as if I should dismiss the bill, in which case the appeal would not take precedence, and could not be heard so soon.

I wish merely to add that if plaintiffs can in any way present this question to either Judge TAFT or Judge SAGE, for the purpose of taking his opinion on the point, I shall be glad for this to be done, and in that event request that either of those judges shall pass upon any question so presented. The case made in the bill is a strong one, and I should certainly not regret to see it investigated, if the court could rightfully do so.

No entry was made under this opinion, but it was arranged that an application should be made to Judge SAGE upon his return, and that in the meantime no part of the stock of the defendant firm should be sold or otherwise disposed of.

Upon that application, which was made in October, affidavits were filed on behalf of the complainants and on behalf of the defendants.

SAGE, District Judge (after stating the facts as above). A careful consideration of the pleadings and affidavits, and of the arguments and briefs of counsel, has led me to the following conclusions:

1. The case does not fall within the provision of section 6343 of the Revised Statutes of Ohio. The averments of the bill do not sustain the contention that a trust, originally cognizable in equity, in the property conveyed, was created by the act of the debtors and their grantees. The bill avers that separate and distinct mortgages were made to Levi D. York, Henry Vincent, William B. Williams, and Ida C. Williams by the defendants Russell, Vincent & Williams, in contemplation of insolvency, and with intent thereby to prefer said York, Vincent, Williams and Ida C. Williams, to the exclusion of the complainants and all other creditors. It is further averred that said York took said securities in trust for himself and said firm and its members, agreeing to account to them for any surplus remaining after the payment of its pretended claim, amounting to $29,900, set forth in said mortgage. In Ohio a failing debtor may lawfully, having in contemplation his insolvency, prefer a creditor, and secure his claim by mortgage. To bring such a case within section 6343, it must be shown that the mortgages were given, not only to secure the claims of the mortgagees, but also of other creditors. Such was not the fact in this case, nor does it appear from the bill, which shows only that a mortgage was made to each of the persons named to secure his or her claim. It is not averred that any one of these parties held for the benefit of any one else. The averment that York held in trust for himself, and for the firm and

its members, is merely a statement of a legal conclusion. The mortgagor, under the law, is entitled to any residue after the payment of the mortgagees' claim. The answer and affidavits filed on behalf of the defendants deny any such claim, or that there was any agreement other than that stated in the mortgage itself.

2. The reliance upon section 6344 of the Revised Statutes of Ohio is not well founded. The complainants are creditors at large. Their claims have not been reduced to judgment. They have not, therefore, exhausted their legal remedy, which is, as was pointed out by Judge CLARK in his opinion, necessary to their standing in this court to present the questions made in the bill. Judge CLARK cites Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977; Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127. These authorities support the proposition that simple contract creditors, whose claims have not been reduced to judgment, cannot have any standing in the circuit court of the United States, sitting as a court of equity, upon a bill to set aside and vacate a fraudulent conveyance, and that this rule is not affected by the fact that the statute of the state in which the property is situate authorizes such a proceeding in the courts of the state, because the line of demarkation between equitable and legal remedies in the federal courts cannot be obliterated by state legislation. It is, however, contended, inasmuch as section 6344 of the Revised Statutes of Ohio not only authorizes any creditor to bring suit to annul transfers, conveyances, or assignments made by a debtor, or procured by him to be made, with intent to hinder, delay, or defraud creditors, but further provides that the probate judge of the proper county, after any such transfer, conveyance, or assignment shall have been declared by a court of competent jurisdiction to have been made with the intent aforesaid, or in trust with the intent mentioned in section 6343, shall, on the application of any creditor, appoint a trustee, who shall recover possession of the property fraudulently transferred, conveyed, or assigned, and administer the same as in other cases of assignment to trustees for the benefit of creditors by reason of the transaction set forth and impeached in the bill, that the complainants, as cestuis que trustent, are entitled to come into a court of equity to enforce the trust thus arising. It is further contended that this trust arose at the time of the conveyance impeached, and was therefore a trust and equity existing in favor of creditors generally, including those who were not judgment creditors. Hence it is urged that this statute creates an equitable right, and enlarges the equitable jurisdiction of the federal courts so as to authorize them to hear and determine this suit upon its merits. Judge CLARK, although he did not concur in this view, preferred that it should be considered by a judge of the district, because he would be familiar with the Ohio legislation. I am not able to concur in the view of counsel. My conclusion is that section 6344 reaches no further than to make a statutory rule for the disposition of the property fraudulently conveyed, substituting a ratable distribution among all the creditors of the debtor, as under

assignments in trust in cases of insolvency, for the preference which in equity was given to the judgment creditor who, having exhausted his legal remedies, came into a court of equity to reach the equitable estate of his debtor. In every case of a fraudulent conveyance or transfer, equity will, if necessary, regard the transferee as a trustee for the benefit of the creditors of the transferror. Clements v. Moore, 6 Wall. 299–312; Perry, Trusts, § 212; 1 Story, Eq. Jur. §§ 350–381. Hence, in every case of an attack upon a conveyance as fraudulent, it might as well be insisted that the bill was, in equitable effect, a bill establishing a trust, and therefore could be maintained upon the suit of any creditor. In such case it might be claimed, as well as in this, that the trust arose out of the fraudulent transfer. The trust, under section 6344, is established and springs from the adjudication upon the suit of the creditor that the conveyance was fraudulent, and, until that adjudication has been made, no trust can be said to exist under that statute.

3. The attempt, by amendment to the bill, to reduce the complainants' claim to a certainty by adopting the amount admitted by the answer, which is less than is claimed in the bill, as the true amount of the claim, will not save the jurisdiction of the court. It is true that in Scott v. Neely it was said by Mr. Justice Field, delivering the opinion of the court, that, in all cases where a court of equity interferes to aid the enforcement of a remedy at law, there must be an acknowledged debt, or one established by a judgment rendered. But he adds that there must, in addition, be an interest in the property, or a lien thereon, created by contract or by some distinct legal proceeding, and that the existence of such lien or interest before the suit in equity is instituted is essential to the jurisdiction. Chief Justice Fuller, in Cates v. Allen, 149 U. S. 458, 13 Sup. Ct. 883, 977, said that the mere fact that a party was a creditor was not enough. "He must be a creditor with a specific right or equity in the property; and this is the foundation of the jurisdiction in chancery, because jurisdiction on account of the alleged fraud of the debtor does not attach, as against the immediate parties to the impugned transfer, except in aid of the legal right." In that case it was sought to maintain the bill under certain provisions of the Code of Mississippi, the suit having been originally brought in a court of that state. But the supreme court said the fact that the statute of the state aimed to create a lien by the filing of the bill did not affect the question, for, in order to invoke equitable interposition in the United States courts, the lien must exist when the bill was filed, and form its basis, and that to allow a lien resulting from the issue of process to constitute such ground would be to permit state legislation to withdraw all actions at law from the one court to the other, and unite legal and equitable claims in the same action, which the court said could not be allowed in the practice of the courts of the United States, where the distinction between law and equity is matter of substance, and not merely of form and procedure. Reference was made in Scott v. Neely to the jurisdiction in foreclosure to ascertain the amount due on the mortgage without the intervention of a jury.

Mr. Justice Field said that the debt or obligation to secure which the mortgage was given was stated in the instrument itself, and the only proceeding with reference to the amount was one of calculation of interest, or of ascertaining the balance after the crediting of partial payments. That statement, however, left out of account that the entire mortgage debt claimed might be assailed as fraudulent, or upon averments of payments or want of consideration. The jurisdiction in equity, in such a case, rests most firmly upon the other ground, that, by the maturity of the obligation and the default of the mortgagor, the legal title becomes absolute in the mortgagee, and there is left in the mortgagor only his equitable interest. The mortgagee's bill is to foreclose that equitable interest, which is cognizable only in a court of equity. The right in equity to ascertain the true amount of the mortgage debt is incidental to the main equity of foreclosure. The application for an injunction will be denied, and the bill dismissed.