## MAXWELL et al. v. McDANIELS et al.

(Circuit Court of Appeals, Fourth Circuit. December 6, 1910.)

No. 1,008.

1. APPEAL AND ERROR (§ 80*)—DECISIONS REVIEWABLE—FINALITY OF DECREE.
   A decree which orders a judicial sale of all of the property involved in the litigation and fixes the time and place of sale is so far final as to be appealable.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 494–509; Dec. Dig. § 80.*

   Finality of judgments and decrees for purposes of review, see notes to Brush Electric Co. v. Electric Imp. Co. of San Jose, 2 C. C. A. 379; General Trust Co. v. Madden, 17 C. C. A. 238; Prescott & A. C. Ry. Co. v. Atchison, T. & S. F. R. Co., 28 C. C. A. 482.]

2. COURTS (§ 508*)—GROUNDS FOR INJUNCTION—FEDERAL COURTS—ENJOINING PROCEEDINGS IN STATE COURT.
   One contract creditor cannot maintain a suit in equity in a federal court to enjoin another creditor of the same debtor from prosecuting an action on his demand in a state court on the ground that the defendant will thereby secure a prior lien on the debtor's property, both because such a case presents no ground of equity jurisdiction and because such a suit is prohibited by Rev. St. § 720 (U. S. Comp. St. 1901, p. 581).

   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1430; Dec. Dig. § 508.*

   Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

3. FRAUDULENT CONVEYANCES (§ 241*)—RIGHT OF ACTION TO SET ASIDE—NECESSITY OF JUDGMENT.
   A simple contract creditor whose claim has not been reduced to judgment cannot maintain a suit in a federal court of equity to set aside an alleged fraudulent conveyance of property by his debtor.

   [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 694–726; Dec. Dig. § 241.*]

4. RECEIVERS (§ 9*)—GROUNDS OF APPOINTMENT—SUIT BY SIMPLE CONTRACT CREDITOR.
   A federal court of equity has no jurisdiction at the instance of a simple contract creditor, whose claim has not been reduced to judgment, to appoint a receiver for property on which he asserts no specific lien.

   [Ed. Note.—For other cases, see Receivers, Cent. Dig. § 15; Dec. Dig. § 9.*]

5. EQUITY (§ 324*)—JURISDICTION—CASE MADE BY BILL.
   Where a bill presents no ground which gives the court jurisdiction to grant equitable relief, such jurisdiction cannot be sustained on the ground that complainant was given a lien by a conveyance made by his debtor, which the bill alleges was fraudulent and void as to him.

   [Ed. Note.—For other cases, see Equity, Dec. Dig. § 324.*]

6. RECEIVERS (§ 29*)—GROUNDS OF APPOINTMENT—INSOLVENCY OF DEFENDANT.
   A court of equity is without jurisdiction to appoint receivers to administer the assets of an individual on the ground of his insolvency, at suit of a simple contract creditor, and such jurisdiction cannot be conferred by the consent of the debtor.

   [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 38–42; Dec. Dig. § 29.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Philippi.

Suit in equity by Isaac McDaniels against Charles D. Gillaspie, Isaac C. Woodford, and others. Decree for complainant, and defendants Woodford and Claude W. Maxwell, trustee in bankruptcy for defendant Gillaspie appeal. Reversed.

W. B. Maxwell, B. M. Hoover, D. H. Hill Arnold, and Samuel T. Spears, for appellants.

J. P. Scott, A. M. Cunningham, and A. R. Stallings, for appellees.

Before PRITCHARD, Circuit Judge, and McDOWELL and ROSE, District Judges.

ROSE, District Judge. There are 21 assignments of error. We find it unnecessary to consider any of them except the first which denies that the court below had any right to entertain the cause. It may be assumed that the allegations of the bill of complaint as to diversity of citizenship and as to the amount in controversy are prima facie sufficient to sustain the jurisdiction of the court below as a court of the United States. Does the bill allege anything which can invoke its jurisdiction as a court of equity?

In his bill of complaint the complainant says that some three years before three of the defendants, Gillaspie, Jenkins, and Harr, were engaged in building and equipping the Gassaway Hotel in Elkins, W. Va. In so doing they became indebted to many people, the complainant among the number. He lent them $10,000 for which they gave him their promissory note payable one year after date. At the time the bill was filed this note was overdue and unpaid. After he lent his money the complainant went to Arkansas, and when he came back he found that his debtors had mortgaged the hotel, and that suits had been brought against them in the state courts upon debts incurred in connection with the hotel enterprise. Judgments recovered in these suits he says, will be made liens upon the hotel property. He nowhere says that he has any lien upon that property or upon any of it. His complaint is that others have or shortly will have and that he has not. He seems to think that those facts give him a right to have all suits against his debtors enjoined, and the hotel property placed in the hands of receivers appointed by a court of equity. He goes on to say that Jenkins and Harr some time before had conveyed their interest in the hotel property to Gillaspie and the latter's wife. He charges that the conveyance to Mrs. Gillaspie was in fraud of creditors. The bill further alleges that suits have been and will be instituted against Gillaspie and that his estate will be largely wasted in litigation. It says that Gillaspie cannot realize upon his investments because of the stringency of the money market. It charges that the Gillaspies had made a lease of the hotel to the defendant Woodford. It is said that this lease which had about three months yet to run was to the disadvantage of both Gillaspie and the creditors, because the rent agreed to be paid was less than it should have been, and because Woodford had not paid what he agreed to pay. The bill uses many more words in telling its story than we have employed in sum-

marizing its allegations, but the substance of them has been stated. The bill prays that the conveyance to Mrs. Gillaspie of a third interest in the hotel property shall be set aside as fraudulent. It asks for the appointment of temporary receivers to take charge, manage, control, and conduct the hotel; that all suits against Gillaspie, Jenkins and Harr upon debts contracted in erecting the hotel or which in any wise involve such property be enjoined, and that the plaintiffs therein be inhibited from further prosecuting them or from instituting any new suits; that the complainant's claim be declared a lien upon the hotel property, that all liens and their relative priorities be ascertained, and if the property cannot be rented for a sum sufficient to pay them all off within five years, that it shall be sold. Upon this bill of complaint receivers were appointed December 5, 1907. They took possession of the hotel property at once, and have held such possession ever since. Within four months after the filing of the bill in this cause, creditors of Gillaspie instituted proceedings in bankruptcy against him. As a result he was on April 3, 1909, adjudicated a bankrupt.

As already stated, the bill of complaint referred to a conveyance from Jenkins and Harr to the Gillaspies, for the purpose and apparently for the sole purpose of asking that in so far as it purported to convey a third interest to Mrs. Gillaspie it should be set aside as in fraud of creditors. In this connection the complainant made the deed a part of his bill, describing it as "Plaintiff's Exhibit Deed No. 2." The record shows that their exhibit in point of fact was not filed with the bill. The receivers were appointed December 5, 1907. The exhibits were not brought into the clerk's office until December 14, 1907.

This deed shows that Jenkins and Harr conveyed their two-thirds interest in the hotel property to the Gillaspies in consideration of $6,000 to be paid September 1, 1907, and of $6,000 to be paid September 1, 1908, and of an agreement by the Gillaspies to assume and pay all the bonded and deed of trust debts against the hotel property, all notes outstanding executed by Jenkins, Harr, and Gillaspie for money borrowed by them used in the construction, purchase of material, the payment of labor and furniture and fixtures of said hotel, and all debts due for labor, material, furniture, and fixtures of every kind, character, and description used in the construction of said hotel or for furniture therein located. It was further covenanted and agreed that the grantors retain a vendor's lien upon the property conveyed to secure the payment of the considerations upon which the conveyance was made. On July 28, 1910, the court below—that is to say, the Circuit Court in the equity cause—decreed that all debts ascertained by the referee in bankruptcy against the Hotel Gassaway property or any debts which may hereafter be proved before said referee within the time prescribed by the bankruptcy act and which are secured by the vendor's lien reserved by Jenkins and Harr in their conveyance to the Gillaspies are decreed as liens upon the hotel property. The decree then ascertains the precise amount due the holders of a first mortgage on the hotel, and declares such sum to be a first lien thereon. It deals in the same way with a second mortgage, and then directs that, unless the debts thus far ascertained by the referee, the names of the creditors having such claims and the amount thereof be-

ing set forth, are not paid within 30 days, the property shall be sold by the special receivers and the trustee in bankruptcy who were appointed special commissioners to make such sale. It is from this decree that the pending appeal has been taken. The appellees have moved to dismiss alleging that the decree assailed is not final. This motion must be denied. The decree orders a judicial sale of all the property involved in the litigation. Under this decree the title will pass beyond the control of the court. It fixes the time and place of sale. Such a decree is so far final that it is appealable. 2 Street's Federal Equity Procedure, 1938; First National Bank v. Shedd, 121 U. S. 74, 7 Sup. Ct. 807, 30 L. Ed. 877; 2 Foster's Federal Practice, § 318.

We pass to the consideration of the jurisdiction of the court below as a court of equity to entertain the bill of complaint. The complainant had no right for two reasons to ask that the court should enjoin the prosecution of suits against his debtor in the state courts of West Virginia. If A. is indebted to both B. and C., it takes no citation of authority to show that B. cannot ask a court of equity to enjoin C. from suing A., merely because C. by beginning his suit first may get a lien upon A.'s property before B. does. In the second place if the complainant had any standing in a court of equity to ask that proceedings at law be enjoined, the statutes of the United States expressly prohibit a federal court of equity from granting that relief when the proceedings sought to be enjoined are pending in a state court. Rev. St. § 720 (U. S. Comp. St. 1901, p. 581).

There are exceptions to the applicability of this statute, but the case at bar is not among them. At the time the receivers were appointed the complainant's claim had not been reduced to judgment. A federal court of equity was therefore without jurisdiction to hear his complaint that his debtor had made a fraudulent conveyance of his property. Scott v. Neely, 140 U. S. 108, 11 Sup. Ct. 712, 35 L. Ed. 358; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977, 37 L. Ed. 804.

It necessarily follows that the court below derived no jurisdiction from the attack made in the bill upon the good faith of the conveyance to Mrs. Gillaspie. If what the complainant says about the lease by the Gillaspies to Woodford can be construed as an allegation that such lease was made in fraud of the rights of creditors the cases cited show that the complainant was not in a position to raise the question in the court below. If what was said about the Woodford lease was intended to charge merely that the Gillaspies had made a bad bargain and were getting the worst of it, to the immediate injury of themselves and the ultimate damage of their creditors, still less reason for equitable interference was disclosed. For centuries the right of every adult man to make as many bad bargains as he chooses has been recognized by the law. The fact that he and those with whom he has business transactions are dissipating what would be a splendid estate if it were only well managed makes no difference. So long as he is not an idiot or a lunatic, within the legal definition of those terms, his creditors who have no specific lien upon the property with which he has been dealing cannot successfully ask any court of equity to an-

nul what he has in good faith done. As we have seen such creditor cannot ask a federal court of equity to set aside his transfers even when they were made with the specific intent to defraud them. A court of equity of the United States has no jurisdiction at the instance of a simple contract creditor when claim has not been reduced to judgment, to appoint a receiver for property upon which he asserts no specific lien. 1 Street's Federal Equity Proced. § 66; Smith v. Railroad Co., 99 U. S. 398, 25 L. Ed. 437; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 377, 14 Sup. Ct. 127, 37 L. Ed. 1113.

No one allegation distinctly made in the bill of complaint, nor all of them when taken together, make out a case for any equitable relief which the court below had jurisdiction to give. In the brief filed by the appellee in this court, so much appears to be tacitly conceded. The attempt here is to sustain the jurisdiction upon a contention which was not set up in the bill of complaint at all, and upon that contention alone.

It is said that complainant was a creditor of Gillaspie, Jenkins, and Harr for money lent them for their hotel enterprise; that his claim was therefore included in the class of claims which the Gillaspies agreed in the conveyance from Jenkins and Harr to pay, and to secure the payment of which that conveyance reserved a vendor's lien. It is argued that this reservation by subrogation inured to the benefit of the complainant, and accordingly at the time of the filing of the bill the complainant had a lien upon an undivided two-thirds of the hotel property, and was therefore entitled to ask for a receiver for it. We have been referred to no case in which the holder of a vendor's lien upon an undivided interest in land is entitled to the appointment of a receiver for the whole land. Nor are we given any citations to show that such a right belongs to one who is not named in the deed reserving the vendor's lien, but who claims to be included in a class of persons not otherwise described than as creditors of the grantors for money borrowed, work done, or materials furnished in the improvement of the land, before the fact that he is included in such class and the amount of his claim has been in some way judicially ascertained. It would seem on principle that if such relief could ever be granted on the ex parte application of persons so situated, it would only be where the danger of irreparable damage to the property involved is far more serious than is alleged in the bill of complaint under consideration.

We need not pursue this branch of the subject farther. The existence of this alleged vendor's lien was not in the bill relied on as a ground for relief. We are not disposed under the circumstances of this case to allow the complainant now to say that while he was not entitled to any of the relief for which he asked in his original or amended bill for any reasons therein assigned, he was entitled to it in fact because of some provisions in a deed which in his bill he charged was as to him void because made in fraud of the rights of himself and other creditors. In Cates v. Allen, supra, it was suggested that the bill might be sustained under the prayer for general relief, as brought for the administration of the assets under the assignment for benefit

of creditors the validity of which a simple contract creditor had attacked. The Supreme Court held that such relief would not be agreeable to the case made by the bill, which was directed to the setting aside of that instrument.

The fact that Gillaspie was in court by his counsel when the bill was filed and made no objection to the granting of the relief asked for does not under the facts of this case in our judgment remove a barrier to the jurisdiction which as has been shown would otherwise have been insuperable. It is not questioned that when a simple contract creditor of a corporation files a bill against it, alleging its insolvency and praying that the court take charge of its assets through a receiver and distribute them among the creditors, and the corporation and such other defendants as were made parties to the bill answer admitting the facts and consenting to the granting of the relief prayed for, receivers may be appointed and retained in the absence at least of prompt attack upon the jurisdiction by some one in interest entitled to be heard. Vide discussion in Hollins v. Brierfield Coal & Iron Company, supra. An individual is not a corporation. The administration of the affairs of an insolvent individual is not a recognized head of equity jurisdiction as is the administraton of the assets of an insolvent corporation. The subject-matter in the former case is not one over which the court has jurisdiction. Mere waiver by the defendant of objections otherwise fatal to the capacity of the plaintiff to invoke the jurisdiction in the case of a corporation removes the only obstacle to the granting of the relief desired. In the case of an individual defendant it leaves untouched the most serious difficulty of all, viz., that the subject-matter is not one within the province of the court. England v. Russell (C. C.) 71 Fed. 818; 1 Street's Federal Equity Practice, § 69.

It is true that in this case no receiver for Gillaspie's general assets was asked for nor was any appointed. The bill, however, did pray that various persons, firms, and corporations, who were creditors of Gillaspie and whose claims were undisputed, should be enjoined from suing him at law, and they were so enjoined. A debtor in embarrassed circumstances may have reasons which appear to him sufficient for consenting to the appointment of receivers for one particular piece of his property, if by so doing he can have many of his creditors enjoined from proceeding at law to secure judgments against him which would bind his other property.

In this case Woodford was an indispensable party defendant to any bill asking for the relief prayed for and granted. In his answer he objected to the jurisdiction of the court, and he is here at this bar insisting on his objection. The decree must be reversed at the cost of appellee McDaniels and the cause remanded with directions to dismiss the bill for want of jurisdiction.

Reversed.