## UNITED STATES v. SLOAN SHIPYARDS CORPORATION et al.

(District Court, W. D. Washington, N. D. December 7, 1920.)

No. 218-E.

1. **Receivers ⬲3—Appointed only as ancillary to other relief.**

   The federal court cannot appoint a receiver unless some final relief in equity is prayed which justifies it in proceeding, since a receivership cannot be considered final relief, but is merely an agency by which the court may administer assets with relation to the general relief.

2. **Receivers ⬲3—Not appointed at suit of contract creditor claiming no lien.**

   A receiver cannot be appointed by a federal court at the instance of a simple contract creditor to take possession of property on which the creditor claims no lien, where the defendants do not consent to, but challenge, the court's jurisdiction.

3. **Pleading ⬲72—Relief demanded determined from prayer.**

   Under Rem. Code Wash. 1915, § 258, the relief demanded is gauged by the prayer which gives the defendants information as to the judgment demanded if default is made so they may be able to decide whether or not to defend.

4. **Receivers ⬲4—Cannot assume jurisdiction over action on simple contract.**

   A complaint in an action styled a suit in equity which alleged a contract between parties and its breach by defendants, and made no claim to lien on the property of defendants, is an action at common law upon simple contract in which the court has no jurisdiction to appoint a receiver to seize the property and sell it and distribute the proceeds.

In Equity. Suit by the United States against the Sloan Shipyards Corporation and others. On motion of three of the four defendants to dismiss the complaint. Motion granted, unless plaintiff asks leave to amend the complaint.

See, also, 268 Fed. 624.

Robert C. Saunders, U. S. Atty., of Seattle, Wash.

Kerr, McCord & Ivey, of Seattle, Wash., for defendants.

NETERER, District Judge. This is an action commenced by the plaintiff against the defendants, alleging corporate relations of the three several defendants with the principal place of business respectively at Seattle and Olympia and the corporate capacity of the United States Shipping Board Emergency Fleet Corporation. It is denominated "a suit in equity." It alleges, in substance, that the defendant United States Shipping Board Emergency Fleet Corporation, the capital stock·of which is owned by plaintiff, was the agent of the plain-

tiff, and on the 18th day of May, 1917, entered into a contract with the defendant Sloan Shipyards Corporation for the construction of 16 wooden ships, giving consideration and terms of payment; that certain payments were made under the said contract, and the defendant diverted $1,000,000 of said payment, and on the 1st of December, 1917, the said defendant was without funds with which to carry on the work under said contract; that on the 1st of May, 1918, a contract was entered into between the plaintiff, acting through the Shipping Board, and the defendant Sloan Shipyards Corporation, by the terms of which the price for the construction of ships was increased and entered into a new plan for payment. It alleges that the Sloan Shipyards Corporation was the owner of the Anacortes Shipbuilding Company, and also of the Capital City Iron Works, that there was advanced by the Sloan Shipyards Corporation to the Anacortes Shipbuilding Company and to the Capital City Iron Works certain sums of money, and that said companies were indebted to the Sloan Shipyards Corporation in such amounts. Various transactions alleged between the Sloan Shipyards Corporation and the Clinchfield Navigation Company, with whom the Sloan Shipyards Corporation had a contract for the construction of four motorships, which contract was canceled by mutual agreement upon payment of certain monetary considerations. It is alleged by the terms of the supplemental contract of May 1, 1918, the Sloan Shipyards Corporation assigned to the plaintiff all its rights, title, and interest in and to all money thereafter becoming due to the Sloan Shipyards Corporation on account of Clinchfield Navigation Company, ships and moneys held in escrow under such arrangement, the contract of which was held by R. M. Calkins, and that it was agreed that "until the completion, delivery, and acceptance of all the vessels being constructed under said original contract all of the money of the defendant Sloan Shipyards Corporation then on hand or thereafter received, or accruing to it under or on account of said contract of May 1, 1918, the said original contract of May 18, 1917, the said Calkins contract, or otherwise, and all moneys assigned to the plaintiff, * * * shall be placed in a special account, and shall be subject to be withdrawn as the plaintiff may provide, and that the plaintiff would from time to time advance to the credit of said special account such sums of money as might be necessary to meet the expense of constructing the Calkins ships, the ships to be constructed for the plaintiff under said original contract of May 18, 1917, and such plant improvements as might be approved by the plaintiff, and the sum of $25,000 to be used for the purchase of all of the outstanding capital stock of the Anacortes Shipbuilding Company when held by others than the defendant the Sloan Shipyards Corporation, and for the purchase of all claims against the Anacortes Shipbuilding Company owned and held by others than the said defendant, provided that the plaintiff would not be obliged to advance in excess of $200,000 more than the amount thereafter received under the Calkins contract for the construction of Calkins ships, and for all other purposes an amount not to exceed the full contract price of the ships to be built for the plaintiff, and that the

total of all unexpended balance of such special account and of all property purchased with moneys withdrawn from said special account and not covered by the mortgage provided for in said contract shall at all times be in the plaintiff until the completion, delivery, and acceptance of all the vessels under such shipbuilding contract," that by the terms of said supplemental contract the Sloan Shipyards Corporation executed and delivered to the plaintiff "its bond in the penal sum of $1,000,000, secured by mortgage and assigned to the plaintiff certain bonds of the Wisconsin Timber Company of the par value of $100,000 then and now held by the Scandanavian National Bank of Seattle, and that the said Wisconsin Timber Company bonds were held by the plaintiff, and that said bonds and mortgage be conditioned to secure the performance of said original contract of May 18, 1917, and repayments of any moneys advanced for the construction of Calkins ships in excess of the sums thereafter received as payment under said Calkins contract and to secure the repayment of any moneys advanced by the plaintiff to said defendant," and for all damages for delay, if any, and that such mortgage should constitute a first lien upon the property which is set out. It is alleged that such bond was executed by the Sloan Shipyards Corporation, the Capital City Iron Works, and Anacortes Shipbuilding Company, delivered to the plaintiff; that the plaintiff is owner and holder thereof; and that all of said defendants executed the mortgage covering specific property belonging to the several corporations, each being thereunto duly authorized. It is alleged that the defendant Anacortes Shipbuilding Company is indebted to the Sloan Shipyards Corporation in the sum of $1,148,464.11; that the Capital City Iron Works is indebted to the Sloan Shipyards Corporation in the sum of $160,-546.90; that neither of said last-named corporations have other creditors; that the plaintiff paid to the defendant Sloan Shipyards Corporation, by advancing funds and furnishing materials, etc., $11,010,-155.51; that the defendant is entitled to credits for completed ships, $3,300,000; for compensation for work done upon six ships under contract discontinued, $2,933,097.43; for credit on four ships under contract discontinued, $1,185,318.96; for extras, materials, overhead expenses, credit of $621,400.14—total credit $8,039,816.53, leaving a balance due of $2,970,338.98. It is further alleged that since the 8th of December, 1917, the defendants Sloan Shipyards Corporation, Anacortes Shipbuilding Company, and Capital City Iron Works have been under the same financial management and the funds "handled" through the same special account; "that none of said three defendants have now any money with which to transact business, and that the expense of protecting the property of said defendants has now and for several months past has been advanced by the plaintiff" ; that all works under contract have been discontinued, and the plants have been idle for "several months"; that "said defendants have ceased to function as going concerns"; that the physical property of the Sloan Shipyards Corporation consists of Shipyard plant equipment, office furniture and equipment, machinery, and small tools of the present market value of $71,149.79, and lumber and other ma-

terial, $222,225.46; that said property is located at the city of Olympia "In a shipyard built upon piling over flooded lands"; that "the piling is deteriorating and such property will not long remain out of water," and upon property not owned by the defendant, and the lease to the same has expired; that the physical property of the Anacortes Shipbuilding Company consists of shipyards, including lands, buildings, shipyards, plant equipment, office furniture, and machinery located at Anacortes, Wash., valued at $57,528.56, and lumber and material worth $36,042.95; that the Capital City Iron Works has assets not in excess of $108,769.42; that defendants are insolvent.

It is stated "that it is necessary and desirable in the interest of all of the creditors of the corporation that a receiver shall be appointed to take charge of the property and assets of the defendants Sloan Shipyards Corporation, Anacortes Shipbuilding Company, and Capital City Iron Works, and to dispose of their assets and their property for the benefit of creditors and all persons interested therein." Prayer is made "that this court may appoint a receiver or receivers of all the property and assets of the defendants, * * * with full power and authority to collect, recover and receive and get in all the same and dispose of said assets and property and distribute the same among creditors under the direction of this honorable court."

The defendants, except the Shipping Board, jointly move to dismiss for the reason: First, that the complaint does not set forth facts sufficient to constitute a cause of action; second, that the plaintiff is not a proper party to the said action, and that there is a misjoinder of parties plaintiff; third, that the court is without power or jurisdiction to appoint a receiver in the above-entitled action; fourth, that there is a misjoinder of parties defendant.

The defendant United States Shipping Board Emergency Fleet Corporation appears "and admits each and every allegation of fact in said bill alleged."

The plaintiff relies upon subsections 5 and 6, § 741, Codes of Washington, which provides for the appointment of receivers "when a corporation * * * is in imminent danger of insolvency, * * *" and "in such other cases as * * * in the discretion of the court, it may be necessary to secure ample justice to the parties," and upon Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, in which it is contended the Supreme Court held that federal courts will enforce new equitable rights created by said statutes, provided such enforcement does not impair any right conferred or conflict with any inhibition imposed by the Constitution or laws of the United States.

[1] The defendants, except the Shipping Board, contend that the plaintiff, if it has any right, it is predicated upon a simple contract claim upon which the defendants are entitled to a jury trial under the Seventh Amendment to the Constitution, which declares that "in suits at common law where the value in controversy shall exceed $20.00, the right of trial by jury shall be preserved," and further contend that no relief is prayed other than the distribution of the property, and that the receivership can only be ancillary to the main relief sought, and, no general relief being prayed, the court is powerless to grant the relief

asked. Undoubtedly in the federal court, to justify the appointment of a receiver, some final relief in equity must be prayed which will justify the court in proceeding. A receivership cannot be considered final relief. It is merely an agency by which the court may reach out and administer assets having relation to the general relief. Zuber v. Micmac Gold M. Co. (C. C.) 180 Fed. 625.

[2] The receivership applied for in this case is the main object of the suit, and is not ancillary to relief prayed for in the complaint. A judgment for a definite sum is not demanded. No sum is ascertained. The plaintiff is a single contract creditor. The defendants do not consent, but challenge the court's jurisdiction. Under such circumstances a federal court will not appoint a receiver. Leary v. Columbia River & P. S. Nav. Co. et al. (C. C.) 82 Fed. 775. A federal court has no jurisdiction at the instance of a simple contract creditor whose claim has not been reduced to judgment to appoint a receiver for property on which he asserts no specific lien. Maxwell et al. v. McDaniels, 184 Fed. 311, 106 C. C. A. 453; Davidson-Wesson Imp. Co. v. Parlin et al., 141 Fed. 37, 72 C. C. A. 525; Peacock, Hunt & West v. Williams et al. (C. C.) 110 Fed. 917; Viquesney et al. v. Allen, 131 Fed. 21, 65 C. C. A. 259.

The Supreme Court, in Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, held that a simple contract creditor of a corporation whose claim has not been reduced to judgment, and who has no express lien upon its property, has no standing in a federal court of equity to obtain the seizure of the debtors property through a receiver and its application to the payment of such debt. In this case, at page 379 of 150 U. S., at page 128 of 14 Sup. Ct. (37 L. Ed. 1113), the court says:

"It is the settled law of this court that such creditors cannot come into a court of equity to obtain a seizure of the property of their debtor, and its application to the satisfaction of their claims; and this notwithstanding a statute of the state may authorize such a proceeding in the courts of the state. The line of demarcation between equitable and legal remedies in the federal court cannot be obliterated by state legislation."

In Scott v. Neely, supra, cited by plaintiff, the claim was impressed as a lien upon property which was the main purpose of the suit, while in the instant case facts are stated which may give the plaintiff a lien upon certain property described in the complaint by reason of the allegations as to execution of a mortgage thereon, but the right of lien seems to be waived.

[3, 4] The relief demanded is gauged by the prayer. This gives the defendants such precise information as to the judgment demanded, if default is made, so they may be able to decide whether or not to defend. Section 258, Code Wash.; Rush v. Brown, 101 Mo. 586, 14 S. W. 735; Arrington v. Liscom, 34 Cal. 375, 94 Am. Dec. 722; Noonan v. Nunan, 76 Cal. 44 at page 49, 18 Pac. 98. There is no prayer for judgment to determine the amount and for impressing the claim upon the property as a lien and for an order of sale. The action, stripped of all of the verbiage except the essentials necessary upon the declared contract, leaves the action as one at common law

upon simple contract, and under all of the authorities this court is without jurisdiction to seize the property and sell it and distribute the proceeds through a receivership, nor can it proceed otherwise because no other relief is demanded. Notwithstanding the pleading is denominated a bill in equity, the contents determine its relation.

If the plaintiff desires to amend the complaint and seek foreclosure of its mortgage lien, permission will be granted.